802 P.2d 488

**Mitchell QUINTANA,
Plaintiff–Respondent,**

v.

**Jim QUINTANA, Defendant–Appellant.**

No. 18093.

Court of Appeals of Idaho.

Dec. 3, 1990.

Jim Quintana, Battleground, Wash., pro se.

Brauner, Coffel & Young, P.A., Caldwell, for respondent. William J. Brauner argued.

WALTERS, Chief Judge.

This is an appeal from a judgment in favor of the respondent, Mitchell Quintana, and against the appellant, Jim Quintana, in an action to recover $11,755 for estate taxes paid by the respondent on behalf of the appellant in the course of the administration of the estate of their late father.[1] We affirm the judgment.

The case comes to us with the following background. The respondent was the personal representative of the estate of Emeterio Quintana, the deceased father of the appellant and the respondent. The appellant was an heir to one-eighth of his father's estate. During the administration of the estate, the decedent's personal property was liquidated and used to pay a portion of the taxes due for the estate and the real property was distributed to the heirs before the estate taxes had been paid in full. All of the heirs, with the exception of the appellant, personally paid the balance of the taxes due on his or her share. When the tax on the appellant's share was not paid by him, the Internal Revenue Service made demand on the respondent, as the personal representative of the estate, for payment of the balance of the taxes. Respondent paid the tax with his own funds and sued the appellant. Pursuant to I.C. § 8–502, respondent sought, and obtained, a prejudgment writ of attachment, which he caused to be served on a local bank that was holding funds for the appellant. After trial to the court without a jury, judgment was entered for the respondent and this appeal followed.

The appellant raises numerous issues on appeal. After due consideration, only the following will be addressed in any detail:

(1) Did the district court err in concluding that the respondent was not a "volunteer" when he paid the balance of the tax due on the appellant's share of the inheritance? (2) Was the respondent guilty of having "unclean hands"? (3) Was this action barred by laches? (4) Did the court have jurisdiction over the appellant, a resident of the state of Washington? (5) Was the writ of attachment improperly issued? Although the appellant specifies other issues relating to (a) the "value" of testimony presented at trial; (b) alleged prejudice by the court; (c) entitlement by the appellant to recovery of damages and for costs of this appeal; and (d) whether there was an oral or written agreement by the appellant to pay the taxes from the inheritance received by him, we find those issues to be without merit and do not discuss them.

I

■ The appellant contends, as he did in the court below, that he should not be liable to reimburse the respondent for the taxes because the taxes were paid by the respondent as a "volunteer." The accuracy of the appellant's position depends, of course, on the circumstances proved at the trial. From the evidence presented, the district court concluded that the respondent was not a volunteer when he paid the balance of the tax on the appellant's share of the estate. The court's findings of fact recite:

> That the Defendant, Jim Quintana, was obligated to pay his proportionate share of the Federal Estate Taxes either by an express or implied agreement with the other heirs, or as a matter of law pursuant to I.C. § 15–3–916(b) [noting the statute's language that "Unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate."].

1. Mitchell Quintana died during the pendency of this action. Pursuant to a stipulation and order entered in the case, his son, Thomas Quintana, as personal representative of the estate of Mitchell Quintana, deceased, was substituted as the plaintiff to pursue the respondent's interest. The caption of the case, however, was not modified. For ease of reference, we will continue to refer to Mitchell Quintana as the respondent.

That the Defendant failed to pay his proportionate share of the Federal Estate Taxes.

That upon failure of the defendant to pay his share of the taxes, Mitch Quintana paid the taxes owed by Jim Quintana on the 14th day of September, 1977. That as personal representative of the estate Mitch Quintana was secondarily liable for the payment of said taxes.

That the Defendant, Jim Quintana, has failed to repay to Mitch Quintana the sum of Eleven Thousand Seven Hundred Fifty Five ($11,755.00) Dollars so paid by Mitch Quintana.

Following these findings, the court concluded:

The payment of the Defendant's taxes by Mitch Quintana was not made voluntarily [but] was necessary in order to discharge a liability for which Mitch Quintana became responsible to the I.R.S. upon the failure of Jim Quintana to pay his taxes.

From our review of the proceeding, we conclude that the court's findings of fact are fully supported by the evidence in the record and consequently they will not be disturbed on appeal. I.R.C.P. 52(a). We are thus presented with the appellant's challenge to the court's conclusion of law, a question upon which we will exercise free review. *Standards of Appellate Review* § 3.2, IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc. 1985).

We hold that the court's conclusion was correct as a matter of law. Idaho Code § 15-3-916 places the responsibility for the payment of taxes on the personal representative. That responsibility is also fixed by federal law. 26 U.S.C. § 2002. "It is settled beyond question that it was the duty of the Executor to pay the Federal Estate Tax, and this duty, if not performed, would result in individual liability on the part of the Executor." *In re Estate of Maurice*, 433 Pa. 103, 249 A.2d 334, 336 (1969), *citing* 26 U.S.C. § 2002. Moreover,

The executor or administrator or other fiduciary who has paid the tax, or who, under some statutes, may be required to pay the tax, and who has apportioned the tax in accordance with the governing statute or who proceeds for its apportionment, has the right and duty, particularly as many statutes specifically impose such duty as to property included in the gross estate which does not come into his possession, to recover such apportionable shares from the persons liable under the statute. [Footnotes omitted.]

Annot., *Estate Tax Apportionment,* 71 A.L.R.3d 371, 389-90 (1976).

In this case, the respondent's payment of the taxes due for the appellant's share of the inheritance was not as a volunteer; it was done to protect the respondent from the statutory liability extant because of his capacity as personal representative of a decedent's estate. In this regard, we uphold the determination of the district court.

II

The appellant asserts that under the "clean hands" doctrine—an equity principle—respondent should not be permitted to recover. He argues that this action essentially is one for relief upon a subrogation theory. He cites 73 AM.JUR.2d, *Subrogation,* § 13, p. 607 (1974), for the proposition that " 'he who comes into equity must come with clean hands,' for equity will withhold subrogation from one who is guilty of a wrong in connection with the matter in controversy." The appellant contends that the respondent's conduct with respect to the administration of their father's estate was a "wrong" within the cited proposition because of alleged mismanagement and delay in the estate proceedings.

Although it is arguable whether this action should be characterized as one for recovery on the basis of subrogation, we need not decide that question. Instead, our focus is whether the trial court was correct in deciding the appellant could not in the present action collaterally attack the respondent's activities with regard to the management of the Quintana estate. The trial court reached its conclusion by noting that, when the final decree of settlement, distribution and closing of the estate was entered in the magistrate division, an appeal had been taken by Jim Quintana (the appellant herein) to the district court. On

that appeal, the activities of the respondent were reviewed in great detail by the district court in light of the appellant's allegations of mismanagement and misconduct on the part of the respondent. Ultimately, the district court affirmed the order of the magistrate approving the accounting and settling and closing the estate. No further appeal was taken from the appellate proceeding involving the estate. In light of the finality of the determination of questions relating to the respondent's administration of the estate, the trial court below held that those questions could not be relitigated in the instant case. We agree.

It is well-settled that integral issues previously resolved in one action cannot be relitigated in another, separate action between the same parties, under the issue preclusion facet of res judicata. *Cole v. Kunzler*, 115 Idaho 552, 768 P.2d 815 (Ct. App.1989); *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983). Here, the basis for appellant's claim of "unclean hands" was essentially the same assertion that he made in challenging the decree closing the estate. His contentions were considered and rejected in the estate proceeding, which became final when no further appeal was taken. Consequently, we hold the appellant's invocation of the "clean hands" doctrine was properly disallowed by the trial court in this case because of res judicata.

### III

■ In his answer to the respondent's complaint, the appellant raised the affirmative defense of laches. He contended that this action should be barred due to delay by the respondent in asserting his claim. The laches defense was brought to the forefront when the appellant filed a motion to quash the prejudgment writ of attachment issued in this case. After a hearing, the trial court denied that defense. The judge ruled:

> The court has not found merit in defendant's assertion of laches. Contributing to the long delay in settling the estate of E. Quintana has been the controversy among the heirs including the defendant.

Defendant's failure to pay the Estate Tax on his distributive share may have prolonged the settlement. Defendant was the direct cause of one continuance in this case and this case was delayed by the death during trial of the plaintiff. The defense of laches is more of a question of prejudice caused by delay than a question of length of delay. In this case defendant could not have been harmed by any delay until [his] property was attached. He has not shown prejudice to any of his defenses arising since then out of the attachment.

The appellant disputes the court's ruling, contending it is erroneous.

■ The defense of laches is a creation of equity and is a specie of equitable estoppel. *Huppert v. Wolford*, 91 Idaho 249, 420 P.2d 11 (1966). Whether a party is guilty of laches primarily is a question of fact and therefore its determination is within the province of the trial court. *Id.* The decision to apply laches is committed to the sound discretion of the trial court. *Id.* Because application of laches is discretionary, the standard of review on appeal is whether the trial court properly found (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 854 (9th Cir.1982). As a corollary, the denial of a defense of laches by the trial court will be upheld in the absence of an abuse of discretion.

Here, the record fully supports the court's decision. We note that the administration of the Quintana estate commenced in August, 1969. In 1970, the heirs agreed that the estate should be distributed to them, subject to the payment of the estate taxes. Evidently, by arrangement with the Internal Revenue Service, the payment of the estate taxes due was extended over a ten-year period, with a very low interest rate. However, in 1977, the I.R.S. made demand on the respondent for the balance due. The respondent and the heirs—other than the appellant—paid the balance by September of that year. Having paid the appellant's share himself, the respondent

then filed this action against the appellant in October, 1978. From our review of the record we do not find any delay that would place the appellant at a disadvantage or in a worse position than he would have been in had the action been prosecuted any sooner or with greater diligence. *See Huppert v. Wolford, supra.* We conclude that the trial court did not abuse its discretion in concluding that respondent was not estopped by laches from bringing the action.[2]

## IV

We next address the appellant's challenge to the jurisdiction of the court over the appellant. As noted in our recitation of the background facts, the appellant is a resident of the state of Washington. When this action was commenced, service of process was effected on him personally in that state. He appeared through counsel, filed an answer to the respondent's complaint and also filed a counterclaim seeking affirmative relief against the respondent. The respondent's complaint, as one of its averments, essentially alleged that the defendant (now the appellant) was subject to the jurisdiction of the court under the provisions of Idaho's "long-arm" statute, I.C. § 5–514(a) and (c). This allegation was admitted in the defendant's answer. Although the complaint later was amended, the jurisdiction allegation remained the same. The appellant's answer to the amended complaint again admitted the jurisdiction allegation.

Later, upon motion of the appellant to quash the prejudgment writ of attachment, the appellant argued that the court did not have jurisdiction over him because of his nonresident status. The court disagreed. In a memorandum decision, the court ruled:

> Section 5–514, I.C., provides for long arm jurisdiction where the non-resident has transacted business in this state for the purpose among others of realizing a pecuniary benefit. The pecuniary benefit in this case is the settlement and receipt of defendant's distributive share of the estate rather than to suffer the expense of delay and litigation.
>
> Having personal jurisdiction over the defendant under the long arm statute, the court has jurisdiction to attach property of the defendant located in Idaho.

On this appeal, the appellant argues that the trial court's conclusion is erroneous. However, we need not decide the issue of jurisdiction by reviewing the merits of the trial court's determination. Rather, we conclude that the question was resolved by the pleadings of the parties. We note that the appellant could have raised the defense of lack of jurisdiction over his person by a pre-answer motion or in the answer itself, under I.R.C.P. 12. *Nelson v. World Wide Lease, Inc.,* 110 Idaho 369, 371, 716 P.2d 513, 515 (Ct.App.1986). A defendant's failure to so raise the defense of lack of jurisdiction over his person constitutes a waiver of that defense under I.R.C.P. 12(h). *See* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391 (1990). In this case, when faced with the allegations of the complaint averring jurisdiction over him, the appellant not only failed under Rule 12(h) to preserve the defense of lack of jurisdiction, he affirmatively admitted those allegations in his answer. Under these circumstances, we hold

---

2. Due to the lengthy time this case has existed, we should explain that disposition of the action was further delayed by other intervening circumstances. When the action was filed in 1978, the estate of Emeterio Quintana was still under administration in the magistrate division. The trial in this case commenced in 1981 and the respondent, Mitchell Quintana, died after the plaintiff rested its case but before the trial was completed. The trial judge continued the proceeding until a personal representative had been appointed in Mitchell Quintana's estate. The court also decided that the action should be abated until the Emeterio Quintana estate was closed. The decree closing that estate was entered in July, 1984. Then an appeal was taken to the district court, challenging that decree. The district court affirmed the decree in 1985. In the meantime, the trial judge who had presided at the commencement of the instant action left office and moved from the state. Another district judge was assigned to the case in 1988 and a transcript was prepared covering the trial to the date of Mitchell Quintana's death. The trial was reconvened before the new district judge in April, 1989. This appeal was then taken from the judgment subsequently entered in July, 1989.

that the court had jurisdiction over the appellant.

## V

■ Finally, we address the appellant's argument that the prejudgment writ of attachment should not have been issued in this case. As noted in Parts III and IV, *supra*, appellant challenged the attachment in the court below by moving to quash the writ on the grounds that the court lacked jurisdiction over him and because of laches in bringing the action. The court denied appellant's motion. We have heretofore upheld the court's ruling with respect to these grounds.

The appellant now asserts two new grounds in support of his contention that the writ was improperly issued. First, he maintains that the attachment was defective because it was granted without notice to him and an opportunity to resist the application for the writ.[3] Second, he submits that the judge who issued the writ was a former partner of respondent's counsel in the practice of law and that they were in partnership when respondent's counsel commenced the administration of the Emeterio Quintana estate. He thus contends there was an ethical impediment or conflict of interest which should have precluded the judge from issuing the writ.[4]

We decline to express any opinion on the merits of these assertions. We have re-viewed the record extensively and are unable to discern that appellant ever raised these alleged defects to the trial court for initial resolution. It is well-established that an issue presented on appeal must have been properly framed and preserved in the court below. *E.g., Masters v. State,* 105 Idaho 197, 668 P.2d 73 (1983); *Green v. Young,* 102 Idaho 735, 639 P.2d 433 (1981). Stated in another way, issues not raised in the trial court will not be considered when asserted for the first time on appeal. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 797 P.2d 1385 (1990). Consequently, we are not persuaded to disturb the trial court's conclusion that the prejudgment writ of attachment properly was issued in this case.

The judgment in favor of the respondent is affirmed. Costs to the respondent; no fees on appeal awarded.

SWANSTROM, J., concurs.

BURNETT, J., participated in oral argument but recused himself prior to issuance of the Court's opinion.

---

**3.** To support this proposition, appellant cites *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and a line of similar cases. We note that Idaho's attachment statute, I.C. § 8–502, was enacted in its present form in 1974, evidently to remedy due process problems similar to those found in *Sniadach.*

**4.** The writ was issued temporarily pending a show cause hearing to make the writ permanent. The judge who issued the temporary writ did not preside at the subsequent show cause hearing. The propriety of the permanent writ was thus decided by another district judge to whom the case had been assigned for trial.