814 P.2d 429

**CALLENDERS, INC., an Idaho corporation, Plaintiff–Respondent,**

v.

**Ernest BECKMAN and Ann Beckman, husband and wife; individually and the community of them composed; and Western Mining and Exploration, Inc., an Idaho corporation, Defendants–Appellants.**

**No. 18318.**

Court of Appeals of Idaho.

April 1, 1991.

Rehearing Denied July 31, 1991.

Eismann Law Office, Nampa, for defendants-appellants. Richard B. Eismann, argued.

White, Ahrens, Peterson & Perry, Nampa, for plaintiff-respondent. Philip A. Peterson, argued.

WALTERS, Chief Judge.

Callenders, Inc., formerly a member of the partnership Callender & Beckman, sought to quiet title to partnership property as against its former partner, Ernest Beckman. A judgment for Callenders, Inc. on that issue was affirmed by this Court in *Callenders, Inc. v. Beckman*, 116 Idaho 857, 780 P.2d 1115 (Ct.App.1989). However, there remained to be determined several of Beckman's counterclaims, in which he asserted that Callenders, Inc. owed him over $1,000,000 for additional wages, interest, and inappropriate partnership transactions. The district court granted summary judgment in favor of Callenders, Inc. on the counterclaims. Beckman appeals, arguing that there were material facts in dispute and that the district court erred in ruling that his counterclaims were barred by the statute of limitation, laches, and quasi-estoppel. Beckman also asserts that the trial court erroneously awarded attorney fees to Callenders, Inc. We affirm the judgment of the trial court.

## Facts

Sometime around 1970 Callenders, Inc. (Callenders), an Idaho corporation, and Ernest Beckman orally agreed to act as partners in a cattle and ranching business. In the early 1970's, according to Beckman, Callenders made several inappropriate transactions to Beckman's detriment, and Frank Callender, the now deceased president of Callenders, orally agreed to pay money to Beckman in certain instances. Those transactions and agreements constitute Beckman's counterclaims in this action and may be summarized as follows:

(1) *Wage Claim.* Beckman asserts that he had an oral agreement with Frank Callender for additional unpaid wages of $233,379.50 for work done for the partnership between April 1970 and December 1985.

(2) *Gem Island Claim.* According to Beckman, Frank Callender orally agreed to pay $20,000 plus $24,400 in interest to Beckman for money Callenders wrongfully withdrew from the partnership between 1969 and 1972 to purchase Gem Island.

(3) *Gardena Ranch Claim.* Beckman claims $185,310 including interest for money that Callenders allegedly wrongfully withdrew from the partnership to

purchase real property known as the Gardena Ranch between 1968–1973. This claim also is apparently based on an alleged oral agreement with Frank Callender.

(4) *Cattle Feed Claim.* Beckman claims $2,500 for transactions involving cattle feed in 1973.

(5) *PCA Claim.* In 1972, Callenders allegedly set over $100,000 to itself as a receivable. Beckman seeks that sum plus $125,000 in interest.

(6) *Interest Overcharge.* Beckman claims that Callenders overcharged the partnership for funds it loaned to the partnership between 1972 and 1984. Beckman claims his share of the overcharge, including interest, is $205,811.12.

(7) *Cattle Sale Receipts.* Beckman claims $4,700 in receipts for sales of cattle in July and August, 1971 which have not been accounted for by Callenders.

Although the partnership kept written books and records in the early 1970's, the partnership itself was not formalized in a written agreement until 1976. When executed, the agreement was accompanied by a financial statement listing the assets and liabilities of the partnership. None of Beckman's claims were listed on the financial statement attached to the 1976 agreement.

From 1976 until 1985, Callender & Beckman operated as a partnership. By agreement, the partnership's books and records were prepared by employees of Callenders and stored at the partnership's principal place of business, the offices of Callenders in Cascade, Idaho, consistent with I.C. § 53–319. Beckman always had access to the partnership's books and records. Apparently, however, he never attempted to inspect the books or ask for an accounting of the partnership's affairs. Instead, he accepted the partnership's yearly tax returns and financial statements as they were sent to him.

In 1985, due in part to the failing health of Frank Callender, the partners agreed to dissolve the partnership. When a dissolution agreement was presented for execution, no financial statement was attached.

However, Beckman had reviewed two financial statements, listing the partnership's assets and liabilities, in November and December, 1985. On January 17, 1986, both Callenders and Beckman, represented by counsel, signed the dissolution agreement. As with the partnership agreement, the dissolution agreement reflected none of Beckman's present claims. A third financial statement was sent to Beckman after he signed the dissolution agreement. The three statements, which are included in the record, contain corrections in mathematics, but do not mention any of Beckman's claims.

In 1986, Callenders sought to quiet title to partnership property known as the Webster ranch. When Callenders initiated its quiet title action, Beckman asserted the counterclaims which form the foundation for this appeal.

The trial court found that the wage claim was barred by the statute of limitation, laches, and quasi-estoppel. The other claims were found to be barred by a combination of the same defenses. Finding the transactions upon which Beckman's counterclaims were based to be commercial transactions, the court awarded attorney fees to Callenders pursuant to I.C. § 12–120(3). We affirm the summary judgment granted by the trial court and its award of attorney fees. Our discussion follows.

## Standard of Review

When evaluating a grant of summary judgment, we review the record to determine if there are genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986). Facts in the record are viewed in favor of the non-moving party. *Id.* at 179, 731 P.2d at 174. The non-moving party is entitled to have all reasonable inferences drawn its favor. *Id.*

## I

## Wage Claim

Beckman asserts that he and Frank Callender reached an oral agreement for

the payment to Beckman of additional wages earned by Beckman while working for the partnership between 1970 and 1985. The trial court dismissed the claim, in one instance stating that it was barred by the statute of limitation. In making that determination, the court relied on the 1976 partnership agreement, which stated:

The current assets, liabilities and net worth of the Partnership as of December 31, 1975 are shown on the unaudited accountant's report and balance sheet ... which are part of this agreement. It is agreed that each item of assets and liabilities listed correctly reflects a contract, account, legal or equitable right and entitlement ... which can be identified by reference to the papers, books of account and other records of the partnership, and that the values assigned, and the resulting net worth of the partnership, are correct as of the date specified. ...

The parties hereto are equal partners in CALLENDER & BECKMAN. They will make equal contributions to the partnership, and share equally its profits or losses. Each will contribute business and management skills without compensation except for a share of any profits or gains which may be realized. *Either partner may be employed by the Partnership, however, to perform work normally compensated at an hourly or contract rate, and when so employed may be compensated by the partnership as would a stranger to it.* (Emphasis added.)

The trial court interpreted this language to mean that partners employed by the partnership and paid beyond the usual partnership distributions would be compensated as strangers to the partnership, and disputes would be governed under the general laws for the recovery of wages, not under the partnership laws of Idaho. The court applied the six-month statute of limitation found in I.C. § 45–608 (now § 45–614) for the collection of additional wages and found Beckman's claim to be barred.

Beckman argues that the trial court erred when it applied I.C. § 45–614 because that section deals with the collection of wages for "servants and laborers," not with "remuneration" of partners. He asserts that I.C. § 53–321 and I.C. § 53–323, which require one partner to act as a fiduciary for the other and state that the partnership continues until there is a settlement or liquidation of partnership affairs, apply. Thus, he argues, any statute of limitation imposed on his wage claim is an error of law.

The only evidence supporting Beckman's assertion that he had any form of agreement with Frank Callender for the payment of additional wages is Beckman's statement that there was such an agreement. None of the relevant documents— the partnership agreement, the dissolution agreement, and their accompanying financial statements, and the affidavits and other documents submitted to support this appeal ever mention such an agreement.

The parties signed the partnership and dissolution contracts agreeing to be bound by their terms. Therefore, the language of the partnership agreement must govern Beckman's claim for wages. Under the terms of the agreement, when a partner *does work normally compensated at an hourly or contract rate,* he may be compensated "as would a stranger" to the partnership. We agree with the trial court's implicit finding that this passage removes the compensation issue from another partnership provision which states that disputes between the parties should be governed by Idaho's partnership laws. Read in context, we interpret the passage to mean that a stranger to the partnership should be subject to the general law for the collections of wages.

■ An employee may bring an action for wages under I.C. § 45–614. An employee is defined as "any person suffered or permitted to work by an employer," and the definition of employer includes a "partnership ... employing any person." I.C. § 45–601(2); I.C. § 45–601(3). Any person has the right to collect wages provided by law or pursuant to an employment contract, but the action to collect those wages must be commenced within six months af-

ter the cause of action accrues if the claim is for wages additional to those already paid. I.C. § 45–614. A cause of action for the collection of wages accrues when an employee has a right to collect the wages that are allegedly owed to him. *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 367, 679 P.2d 640, 644 (1984).

■ According to Beckman's affidavit opposing Callenders' motion for summary judgment, Beckman had already received between $6,000 and $8,000 per year in salary from the partnership. In his brief, Beckman denominates his wage claim as one for "unpaid additional wages." Based on these assertions, as well as the terms of the partnership agreement, we find Beckman's wage claim to be subject to the six-month period of limitation expressed in I.C. § 45–614. Applying this period, Beckman's claim for wages is barred. His cause of action accrued, at the earliest, in 1970, and at the latest, six months after December 31, 1985, the final date for which he claims wages. Beckman did not file his claim for wages until February 25, 1987.

Next, Beckman asserts that even if the six-month statute of limitation applies, he was within the statute because he filed his claim four months after he inspected the partnership's books and records. Beckman has supplied us with no authority, nor have we discovered any, from which to conclude that the six month limitations period may be extended by a "discovery" exception. Further, Beckman would have gained no new information about his employment by examining the books and records. His claim is for his own work. As the trial court pointed out, "He knew what he was paid. He knew what he did. Examination of the partnership books would add nothing to that knowledge."

■ Beckman asserts that Callenders waived its defense of the statute of limitation when it signed the partnership dissolution agreement which set the date for inspection of the books and records and gave Beckman the right to complain about "material errors." Beckman failed to raise this argument below and asserts the position for the first time on appeal. An issue not presented to the trial court will not be considered on appeal. *Dunn v. Baugh,* 95 Idaho 236, 238, 506 P.2d 463, 465 (1973).

■ Relying on the requirements stated in I.R.C.P. 8(c), Beckman argues further that Callenders waived its affirmative defenses because it failed to plead them in its answer to Beckman's counterclaim. Although it is preferred to plead affirmative defenses in original pleadings, those defenses also may be pled for the first time in a motion for summary judgment. *Bluestone v. Mathewson,* 103 Idaho 453, 455, 649 P.2d 1209, 1211 (1982). Here, as in *Bluestone,* the defendant knew of the affirmative defenses, they were raised before any trial of the cause on its merits, and the defendant was given time to argue against their application. Therefore, raising the affirmative defenses for the first time in the motion for summary judgment does not constitute a waiver.

■ The district court also found Beckman's wage claim to be subject to the doctrine of laches. Beckman argues that the court erred when it applied this doctrine. Because laches was applied to bar all of Beckman's claims, we will discuss it here.

■ Laches is a type of equitable estoppel. *Quintana v. Quintana,* 119 Idaho 1, 802 P.2d 488 (Ct.App.1990). Whether a party is guilty of laches is primarily a question of fact and therefore its determination is within the province of the trial court. *Id.* The decision to apply laches is committed to the sound discretion of the trial court. *Id.* The standard of review on appeal is whether the trial court properly found (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Id.*

Beckman's lack of diligence is readily apparent. He knew that his claims were not recognized by the partnership as far back as 1976, when the partnership agreement was drawn up and the financial statement prepared. He did not avail himself of the opportunity to inspect the partnership's books and records, nor did he then assert any claim against the partnership. Fur-

ther, in January, 1986, he signed the dissolution agreement after previously examining two lists of assets and liabilities, both of which failed to itemize any of his claims. Still, Beckman did not assert his claims until February 1987.

██ Prejudice is found in the approximately $450,000 in interest that Beckman asserts in his claims. Also, Beckman's failure to prosecute his claims in a timely fashion, and the litigation that has ensued, has caused Callenders considerable delay in concluding the affairs of the partnership. Moreover, because of Beckman's delay in asserting his wage claim, Callenders has been presented with the inherently difficult situation of defending against allegations of oral agreements made with its former president, Frank Callender, who is now dead. A court may discourage stale demands by refusing to interfere where there has been long acquiescence in asserting adverse rights especially if the parties to the transaction have died. *Ryan v. Woodin*, 9 Idaho 525, 531, 75 P. 261, 267 (1904). We hold that the district court did not abuse its discretion in concluding that Beckman's claim was barred by laches. *Quintana*, 119 Idaho 1, 802 P.2d 488.

██ By entering into the partnership and dissolution agreements, Beckman affirmed that the partnership did not recognize his wage claim. He is now asserting a position inconsistent with his previous posture, to the detriment of Callenders, while he of knew of his rights previously. Therefore, the doctrine of quasi-estoppel may be invoked to bar his wage claim. *See Obray v. Mitchell*, 98 Idaho 533, 538, 567 P.2d 1284, 1289 (1977). Again, we find no abuse by the court below in applying quasi-estoppel to Beckman's wage claims.

## II

### The Other Claims

Beckman argues that the court erred when it found the remainder of his claims to be barred by a combination of the applicable statutes of limitation, laches, waiver and quasi-estoppel. We hold that the court did not err. Because we find that the claims are properly denied by an application of the statute of limitation and laches, we will not address the court's application of quasi-estoppel and waiver.

When dissolving their partnership, Callender & Beckman used the following language:

The parties hereby represent that to the best of their knowledge and belief, all of the assets set forth on said exhibit are assets of the partnership and *the liabilities set forth on said exhibit set forth a true, correct and complete summary of all liabilities, debts and obligations of the partnership* ... Except for a collateral assignment ... of the Webster ranch, of which the parties are aware, *neither partner has created any liability or obligation not set forth on said exhibit.*

*In the event that there are material errors in the books and records (i.e. greater than $50,000.00), either party reserves the right to complain about the same,* the parties hereto recognizing that the dissolution and liquidation being agreed to herein is being based upon said books and records; provided, however, nothing herein shall unwind said dissolution, *the sole right remaining being to make a claim for bookkeeping errors.* (Emphasis added.)

Again, we note that all of the disputed transactions were either totally accomplished or begun before the partnership was formalized in writing in 1976. None of the claims were reflected in the financial statement attached to the partnership agreement. Therefore, Beckman's signing of the partnership agreement and his inspection of the accompanying financial documents must have put him on notice in 1976 that the partnership did not recognize the claims he now makes.

In 1986, Beckman was again put on notice that his claims were not recognized by the partnership when he signed the dissolution agreement. None of his claims were listed on the several financial statements that were presented during the dissolution discussions. As with the agreement that formalized the partnership, Beckman was

represented by counsel when he signed the dissolution agreement. Further, although Callenders prepared and stored the partnership's books and records, there is nothing in the record to suggest that Beckman was ever denied access to them. In fact, the record suggests that he never attempted to view them. He never sought an accounting of the partnership's affairs, even though he knew as early as 1976 that his present claims were not being recognized. Instead, he seemed content to accept the yearly tax returns and financial statements he received.

Beckman argues that the provision in the dissolution agreement reserving to the parties the right to complain about "material errors" in bookkeeping allows him to bring his present claims. We are not persuaded by Beckman's argument. Both the partnership and dissolution agreements stated that their attached documents set forth a true list of the partnership's assets and liabilities and that neither party had created any other liabilities not listed. It is illogical to think that a party, represented by counsel, would sign such a document and then six months later complain that several substantial liabilities had been omitted. The partners executed the dissolution agreement to settle the rights, assets, and liabilities of the parties. The only right reserved was to complain about material errors, which in this instance we interpret to mean mathematical errors in the accounting of the listed assets and liabilities. To hold otherwise would be to say that the partners executed the dissolution agreement intending that it would have no effect if a party later sought to complain about omissions of entry.

The district court found all of Beckman's claims to be barred by the applicable statute of limitation. We agree. The *Gem Island* claim and the *Gardena Ranch* claim are based on alleged oral agreements with Frank Callender. The transactions occurred in the early 1970's. The alleged agreements between Frank Callender and Beckman for payments regarding these transactions also were made during that period. Idaho Code § 5–217 imposes a four-year period of limitation on actions based on oral agreements. That period has expired. The *Cattle Feed* claim, the *PCA* claim and the claim for the *Cattle Sale Receipts* occurred, at the latest, in 1973. Although the district court was not specific as to what period of limitation it applied to these claims, any period of limitation described in the Idaho Code has long since run.

Beckman's final claim is for interest overcharges on loans made by Callenders to the partnership between 1972 and 1984. The trial court determined that this claim was barred by the theories of laches, waiver and estoppel. The court also denied the claim for overcharges prior to 1984 because they were deemed to be barred by an unspecified statute of limitation. For the same reasons as described when we addressed Beckman's wage claim, we find that the court did not err when it held that these claims were barred by laches.

### III

### Attorney Fees

Beckman challenges the court's award of attorney fees to Callenders based on I.C. § 12–120(3). He argues that his counterclaims sought recovery for the tortious actions of Callenders, not for wrongs in commercial transactions between the parties. Thus, Beckman claims that I.C. § 12–120(3) does not apply. *See T–Craft Aero Club v. Blough*, 102 Idaho 833, 642 P.2d 70 (Ct.App.1982); *Chenery v. Agri–Lines Corp.*, 106 Idaho 687, 682 P.2d 640 (Ct.App.1984). We hold that although the court may have erroneously relied on I.C. § 12–120(3) when it awarded attorney fees, based on the language of the partnership and dissolution agreements, the award was appropriate. Accordingly, where the trial court has reached a correct result, but on the wrong theory, the result will be upheld on appeal by applying the correct theory. *Bergkamp v. Carrico*, 108 Idaho 476, 480, 700 P.2d 98, 102 (Ct.App.1985); *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984).

The partnership agreement states that "attorney fees in a reasonable amount may

be included as an item of damages for any actionable breach of this agreement." The dissolution agreement provides that if either party "is required to initiate legal action to enforce the terms of this agreement, then the prevailing party ... shall be entitled to an award of reasonable attorney fees and costs...." Beckman essentially has challenged the terms of both agreements, contending that they do not contain all of the terms agreed to by the parties. Because his challenge must fail for the reasons stated by the district court and reiterated in this opinion, the result of this action is to enforce the terms of the written agreements. Therefore, Callenders is entitled to attorney fees in its effort to enforce the dissolution agreement.

## Conclusion

The trial court did not err when it granted summary judgment to Callenders on Beckman's counterclaims. Based on the language of the partnership and dissolution agreements entered into by both parties, we hold that there are no genuine issues of material fact in dispute. We also affirm the trial court's award of attorney fees.

Finally, we conclude that Callenders is entitled to attorney fees on appeal, based on the language of the partnership dissolution agreement. As we have discussed, the dissolution agreement provides that the prevailing party in an action to enforce the agreement is entitled to attorney fees. Beckman's unsuccessful challenge to the terms of the agreement leaves Callenders as the prevailing party with respect to the enforcement of the terms of the agreement. Costs, together with attorney fees on appeal, to the respondent, Callenders, Inc.

SWANSTROM and SILAK, JJ., concur.