931 P.2d 621

Randall and Catherine **RAEDLEIN,**
Plaintiffs–Appellants,

v.

**BOISE CASCADE CORPORATION,**
Defendant–Respondent.

No. 22625.

Supreme Court of Idaho.
Twin Falls, November 1996 Term.

Dec. 31, 1996.

Rehearing Denied Feb. 28, 1997.

Lojek & Strother Chtd., Boise, for appellants. Jeffrey A. Strother argued.

Guy G. Hurlbutt, Boise, for respondents.

JOHNSON, Justice.

This is an at-will employment case. We conclude that the trial court correctly granted summary judgment dismissing the employee's claims that (1) the employment was not at-will, (2) there was a breach of the covenant of good faith and fair dealing, and (3) the employer was estopped to deny the employee's claim to the benefit of certain personnel policies. We also conclude that the trial court did not abuse its discretion in denying the employee's request to amend the complaint to allege a claim based on the public policy exception to the at-will employment doctrine.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

In October 1989, Randall Raedlein (the employee) applied for employment with Boise Cascade Corporation (the employer). After several interviews, during which there was no mention of the employer's at-will employment policy, the employer offered the employee employment in November 1989. The employee later testified that the employer's representative (the interviewer) who interviewed him implied to the employee that the employer would provide "a very secure job."

On the employee's first day of work, the employer presented him with an "Application for Employment" (the application), which included a statement that the employee agreed that his employment would be at-will and that any change in this employment policy would have to be in writing and signed by an officer of the employer. The employee later testified that he did not believe that the application had anything to do with him because he was already on the payroll before he signed the application and he was not applying for employment.

During his employment, the employee had access to and used the employer's "Corporate Policy Manual" (the manual), which contains several disclaimers stating that employment by the employer is at-will, and this status could only be changed in writing signed by the employer's vice president of human resources (the vice president). In addition,

before and throughout his employment, the employee had access to the employer's "Salaried Employee Handbook" (the handbook), which also contained a disclaimer stating that neither the handbook nor any of the employer's policies should be considered a contract of employment.

The employer required the employee to attend training seminars in which he was instructed in the recommended policies and procedures regarding the review, discipline and termination of the employer's employees. These policies and procedures recommend the documentation of problems, giving notice to employees of problems, and creating plans for the employee to address the problems. These policies and procedures were laid out in the "Performance Planning and Review Handbook" (PPR). The employee was instructed that PPR was to be followed in the discretion of the manager, except for situations in which there were compelling safety considerations. The employee later testified that when he wanted to terminate the employment of three subordinates, he was told by senior officers of the employer that he had to follow PPR. According to the testimony of the vice president, a committee of the employer determined in September 1993 that PPR was obsolete and should no longer be used by the employer's managers. The employee relations manager (the manager) employed in December 1993 in the division where the employee worked testified that he never used PPR. There is no evidence in the record that the employee knew that PPR was not in use in 1994.

In 1990 and 1991, the employee received good employment reviews from his supervisor. In April 1993, the employee met with the manager to work on building a better department. The meeting resulted in identifying three areas in which the employee could improve: (1) demonstrate more trust in subordinates, (2) stop double-checking the work of subordinates, and (3) listen to the concerns of subordinates.

The manager testified that he informed the employee that continued unsatisfactory performance could result in the employee's termination. The employee testified that the

manager never told him that he was in any trouble.

In January 1994, the employee was notified that he would be terminated effective March 1994 and was given an opportunity to meet privately with representatives of the employer to discuss his termination. The reasons given for his discharge were problems with his leadership skills, technical expertise, and personal style.

The employee and his wife (hereafter referred to jointly as the employee) sued the employer alleging breach of contract, breach of the covenant of good faith and fair dealing, and estoppel. The employer requested summary judgment, and the employee requested leave to amend the complaint to allege a claim based on the public policy exception to the at-will employment doctrine. The trial court denied the motion for leave to amend and granted summary judgment in favor of the employer. The employee appealed.

## II.

## THE DISCLAIMERS CONTAINED IN THE EMPLOYER'S MANUAL AND HANDBOOK FORECLOSE THE EMPLOYEE'S BREACH OF CONTRACT CLAIMS.

■ The employee asserts that the at-will employment doctrine does not preclude him from asserting a claim for breach of contract for wrongful termination. We disagree.

In *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 874 P.2d 520 (1994), the Court restated the principles that guide our resolution of the employee's breach of contract claims:

It is settled law in Idaho that, unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party. Either party may terminate the relationship at any time for any reason without incurring liability. Thus, in the absence of an agreement which limits either party's right to terminate the employment relationship, either party may terminate it at any time or for any reason. This rule reflects the judiciary's reluctance to bind employers and

employees to an unsatisfactory and potentially costly situation, although we recognize that either party is likely to be damaged by an unforewarned termination of the employment relationship. .

A limitation on the at-will relationship may be express or implied. A limitation will be implied when, from all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either party's right to terminate the relationship was limited by the implied in fact agreement.

In particular, the presumption of an at-will employment relationship can be rebutted when the parties intend that an employee handbook or manual will constitute an element of an employment contract. Whether a particular handbook does so may be a question of fact, unless the handbook "specifically negates any intention on the part of the employer to have it become a part of the employment contract."

*Id.* at 712–13, 874 P.2d at 523–24 (citations omitted).

The trial court concluded that the application was a contract, and that the provision requiring that any change in the employee's at-will status must be in writing and signed by an officer of the employer precludes the employee's claim of an implied contract limiting the manner in which he could be discharged. Because he signed the application after the employer had already employed him, the employee contends that there was no consideration to support the construction of the application as a contract. We conclude that because of this circumstance there is a genuine issue of material fact concerning whether the application constitutes a contract. Therefore, the application is not a basis for dismissing the employee's breach of contract claims.

The provisions of the manual and the handbook, however, do negate any intention by the employer that the manual, the handbook, or other policies become part of the employment contract. The manual provides:

This policy manual provides a description of Boise Cascade's general policies and is not intended to and does not create

a contract of employment in any manner. Employment at Boise Cascade is at will, and either the employee or the company may end the employment relationship at any time and for any reason. No Boise Cascade representative, with the exception of the vice president, Human Resources, has any authority to enter into any contract of employment to the contrary, and then only if the vice president signs a specific written employment agreement. Boise Cascade reserves the right to revise or to terminate its policies and benefit plans from time to time and within its sole discretion.

The handbook provides:

NEITHER THIS HANDBOOK NOR ANY OF THE COMPANY'S POLICIES OR BENEFIT PLANS SHOULD BE CONSIDERED A CONTRACT FOR PURPOSES OF EMPLOYMENT OR PAYMENT OF COMPENSATION OR BENEFITS.

These disclaimer provisions preclude PPR from becoming an implied contract changing the employee's at-will status.

## III.

### THERE WAS NO BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

■ The employee asserts that the employer violated the covenant of good faith and fair dealing by failing to follow PPR in discharging the employee. We disagree.

■ The doctrine of an implied covenant of good faith and fair dealing applies to all employment relationships. *Mitchell,* 125 Idaho at 715, 874 P.2d at 526. This means that any action by either the employer or the employee that violates, nullifies, or significantly impairs any benefit of the employment contract violates the covenant. *Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 669, 799 P.2d 70, 75 (1990).

The employee contends that the employer violated the covenant of good faith and fair dealing by failing to follow PPR. Because our analysis of the breach of contract issues in this appeal has caused us to conclude that PPR did not become part of the employee's

at-will employment contract, there is no basis for the employee's good faith and fair dealing claim.

## IV.

### THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT DISMISSING THE EMPLOYEE'S ESTOPPEL CLAIM.

■ The employee asserts that the trial court should not have granted summary judgment dismissing the employee's claim that the employer is estopped from terminating the employee without following the terms of PPR. We disagree.

■ To prove estoppel, the employee must show: (1) lack of knowledge and the means of knowledge of the truth as to the employer's intention that PPR would apply to the discharge of the employee, (2) reliance upon the conduct of the employer, and (3) a prejudicial change of position by the employee based on this lack of knowledge and reliance. *Tiffany v. City of Payette,* 121 Idaho 396, 403, 825 P.2d 493, 500 (1992).

By presenting evidence of the disclaimers contained in the manual and the handbook, the employer shifted to the employee the burden of presenting evidence that would create a genuine issue of material fact whether the employer represented that PPR would apply to the employee's discharge. Although the employee presented evidence that PPR was used in his department, this evidence did not create a genuine issue of material fact in the face of the disclaimers. Only evidence that the employer did not intend to enforce the disclaimers would have created a genuine issue of material fact concerning this element of the employee's estoppel claim. The employee did not present evidence of this character.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE EMPLOYEE'S REQUEST TO AMEND THE COMPLAINT TO INCLUDE A CLAIM FOR VIOLATION OF PUBLIC POLICY.

■ The employee asserts that the trial court should have granted his request to

amend the complaint to include a claim that the employer violated public policy in discharging him. We conclude that the trial court did not abuse its discretion in denying the request.

I.R.C.P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." The decision to grant or permit the amendment is within the discretion of the trial court. *Jones v. Watson*, 98 Idaho 606, 610, 570 P.2d 284, 288 (1977).

The employee requested amendment of the complaint on the basis that his discharge was in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. The employee premised this request on deposition testimony by one of the employer's supervisors that the employee could not listen to what his subordinates were telling him. This evidence is not sufficient to give rise to an inference that the employer was aware that the employee had attention deficit disorder.

## V.

## CONCLUSION

We affirm the summary judgment dismissing the employee's complaint.

We award costs on appeal to respondent. Respondent did not request attorney fees.

McDEVITT, C.J., and TROUT, SILAK and SCHROEDER, JJ., concur.