16 P.3d 272

David A. CREA, Plaintiff–Appellant–Cross Respondent,

v.

FMC CORPORATION, Defendant–Respondent–Cross Appellant.

No. 24422.

Supreme Court of Idaho.

Pocatello, September 2000 Term.

Dec. 20, 2000.

Lowell N. Hawkes, Chtd., Pocatello, for appellant. Lowell N. Hawkes argued.

Ward, Maguire & Bybee, Pocatello; Otten, Johnson, Robinson & Neff, Denver, for respondent. Lawrence W. Marquess argued.

SCHROEDER, Justice

Dave Crea (Crea) appeals the district court decision granting summary judgment in favor of FMC Corporation (FMC) on his claims related to wrongful discharge from employment.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

FMC hired Crea as an associate engineer in 1974. Crea was a valuable employee and was awarded four patents which benefited FMC. However, he also had difficulties in his employment relationship with FMC, including bouts of depression. Crea's supervisor, Robert Manley (Manley), placed Crea on a four-month probationary plan beginning in October of 1991. Manley set forth the conditions of the probation in an interoffice memorandum:

An assessment will be made at monthly intervals to evaluate performance versus that months activities target. Compliance with those targets moves you into the next months activities. Non compliance will result in termination. Successful completion of the entire fourth month program will result in continued employment predicated upon continued performance at that level.

*Id.*

FMC terminated Crea's employment on December 12, 1991. He was to have completed piping and instrument drawings for a meeting on December 10 and 11, but these drawings were not completed. Prior to this time Crea had been in disfavor with supervisors because he had circulated a memorandum critical of reports prepared by others. He had also uncovered so-called "arsenic documents" in the course of an assignment to assemble documents which he had distributed to supervisors at FMC. The arsenic documents indicated that FMC had been involved in activities that contaminated the environment and that FMC had covered up the violations.

Crea filed a complaint in district court on December 10, 1993, alleging (1) breach of contract/wrongful discharge, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional and (4) negligent infliction of emotional distress, and (5) negligence. The original complaint named his supervisors as defendants, but these defendants were later dismissed without prejudice. Over the course of four years, the case was set for trial many times before FMC filed a motion for summary judgment on May 17, 1997. Crea responded to this motion and filed a motion for partial summary judgment.

The district court granted summary judgment for FMC on all claims except the implied covenant of good faith and fair dealing. Initially, the district court concluded that there was a "genuine issue of fact as to whether Crea was entitled to have been eval-

uated at the end of December as to whether he met that month's target activities, as he had been in October and November and whether FMC denied him that benefit." The district court denied Crea's motion for partial summary judgment.

FMC filed a motion for reconsideration of the order denying summary judgment on the issue of good faith and fair dealing. The district court altered its original decision and granted summary judgment for FMC on all issues, awarding FMC costs, but not attorney fees. Crea appealed the decision granting summary judgment in favor of FMC, and FMC cross appealed on the issue of attorney fees.[1]

## II.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, the Court applies the same standard of review used by the district court originally ruling on a summary judgment motion. *Idaho State Ins. Fund v. Van Tine,* 132 Idaho 902, 905, 980 P.2d 566, 569 (1999). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *First Security Bank v. Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998).

## III.

### THE DISTRICT COURT DID NOT ERR IN FINDING THAT FMC'S TERMINATION OF CREA DID NOT VIOLATE PUBLIC POLICY.

Crea asserts that his termination was a violation of public policy, alleging that he was fired because he uncovered documents which revealed FMC's knowledge of environmental damage it had caused and FMC's attempts to unlawfully conceal this knowledge. FMC argues that (1) this claim was not sufficiently raised in Crea's complaint, (2) the public policy exception does not apply to Crea's

---

[1]. The district court decided many more issues than Crea has presented to this Court on appeal.

However, on appeal, the scope of review is limited to the two issues designated by appellant Crea in his brief. *See State v. Hoisington,* 104 Idaho 153, 657 P.2d 17 (1983) (the Supreme Court will not review the actions of a district

court which have not been specifically assigned as error, especially where there are no authorities cited for argument contained in the briefs upon the question). Crea does not cite authority or develop an argument for any issues aside from the two which he specifically names in his brief.

circumstances and (3) there are no genuine issues of fact regarding whether Crea was fired for uncovering the subject documents. The district court held that (1) Crea's complaint sufficiently raised a public policy claim, (2) his claim did not fall under the public policy exception to the at-will doctrine, and (3) "even assuming that Crea's claim would fall under the public policy exception, the facts in the case at bar do not present an issue of fact regarding whether Crea was fired for uncovering arsenic documents."

### A. Crea Adequately Stated A Public Policy Claim In His Amended Complaint.

The general rules for pleading are set forth in Rule 8 of the Idaho Rules of Civil Procedure. Rule 8(a)(1)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement has been interpreted liberally, *see, e.g., Whitlock v. Haney Seed Co.*, 114 Idaho 628, 759 P.2d 919 (Ct.App.1988), *Greenwade v. Idaho State Tax Comm'n*, 119 Idaho 501, 808 P.2d 420 (Ct.App.1991). Applying a standard of liberal construction, the amended complaint states a public policy claim.[2]

### B. Crea's Claim Would Fall Under The Public Policy Exception To The At-Will Employment Doctrine.

■ The public policy exception to the employment at-will doctrine limits the employer's right to discharge an employee without cause when the discharge would violate public policy. The purpose of the exception is to balance the competing interests of society, the employer, and the employee in light of modern business experience. "The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges." *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 668, 799 P.2d 70, 74 (1990). Crea maintains that he was fired because he uncovered and disclosed to FMC supervisors

documents in FMC's records indicating that activities of FMC had caused serious contamination, including arsenic that threatened ground water. At the time Crea discovered the documents he was working on a Resources Conservation and Recovery Act team for FMC. Part of the duties of the team was the organization of environmental documents for a superfund cleanup.

There is a strong public policy favoring investigation and disclosure of criminal activity. Crea's claim for wrongful discharge would fall under the public policy exception to the at-will doctrine if facts supporting the claim were established.

### C. Crea Has Not Established Facts Supporting His Public Policy Claim.

■ Despite the fact that Crea's claim would fall under the public policy exception to the at-will doctrine, the evidence does not support his allegations. Though disputed, the Court must assume that FMC attempted to cover up unlawful environmental dealings. Regardless, Crea has failed to link any cover-up with his own termination. He relies upon an interoffice e-mail memorandum from his supervisor to FMC's environmental manager that makes the following statement: "HELP!!!!! The attached received a wide distribution within the plant and has caused some heartburn for the Enviro folks (and myself). The hammer has got to get bigger." No one disputes that the memorandum refers to Crea. However, this e-mail does not link Crea's termination with the alleged public policy violation. The conduct for which Crea was being criticized had nothing to do with unlawful activity. He had written and circulated a critical memorandum concerning a report that was unrelated to any environmental violation by FMC. Additionally, the e-mail preceded the time the environmental documents were uncovered and distributed to FMC supervisors by Crea. The e-mail was dated December 19, 1990, and, by Crea's account, the arsenic contamination documents were uncovered on January 2, 1991.

---

**2.** Paragraph 6 of Crea's amended complaint states: On December 12, 1991, after about 17½ years of service by Plaintiff, Defendant FMC discharged Plaintiff from employment, without just cause or consideration of Plaintiff's temporary illness and for reasons that were wrongful under the law. At the time of discharge, Plaintiff was undergoing an active, planned course of treatment and testing to determine appropriate long-term treatment and was working under mutually-agreed probationary terms which were thereafter violated by Defendant FMC and its agents.

Crea discovered the documents in the course of a work assignment to locate documents. Reasonable inferences must be drawn in favor of Crea if there are facts to support those inferences, but the facts do not give rise to reasonable inferences linking the termination to Crea's discovery and dissemination to FMC supervisors of the contamination documents. The facts allow speculation only.

## IV.

## THE DISTRICT COURT DID NOT ERR IN FINDING THAT FMC DID NOT BREACH THE COVENANT OF GOOD FAITH AND FAIR DEALING IN TERMINATING CREA ON DECEMBER 12, 1991.

█ Crea does not dispute that he was an at-will employee before he was placed on probation. The threshold question is what effect, if any, the probation had upon Crea's status as an at-will employee. If the terms of the probation did not create a new employment contract or modify the existing one, then Crea's status as an at-will employee remained unchanged. If the probation modified the existing employment contract, Crea would be entitled to the rights and benefits created by the modification.

Crea alleges that the covenant of good faith and fair dealing was breached because (1) his employer attempted to sabotage his success under the probationary term, (2) the goals during the probationary period were not realistic and fair, (3) he was terminated because of his illness, the depression that affected him. The district court initially held that there was a genuine issue of material fact as to "whether Crea was entitled to have been evaluated at the end of December as to whether he met that month's target activities, as he had been in October and November." However, after evaluating FMC's motion for reconsideration, the district court determined that FMC was entitled to summary judgment on the question of the covenant of good faith and fair dealing. The district court relied on *Raedlein v. Boise Cascade Corporation*, 129 Idaho 627, 630, 931 P.2d 621, 624 (1996) in concluding that "... Crea's probation did not alter his at-will status (did not become part of his employment contract with FMC), FMC cannot be held to

have breached the covenant of good faith and fair dealing by firing Crea in early December 1991, rather than after evaluating him at the end of the month." The district court noted that "if Crea were entitled to an evaluation at the end of December, then he would be guaranteed continued employment for at least thirty days, a benefit to which he is not entitled to under the covenant of good faith and fair dealing."

█ The covenant of good faith and fair dealing is a judicially created exception to the employment at-will doctrine based on a contractual duty of good faith. This covenant implies obligations into every employment contract. *Sorensen*, 118 Idaho at 669, 799 P.2d at 75; *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989). Any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant. *Metcalf,* 116 Idaho at 627, 778 P.2d at 749.

The district court looked to cases involving employee handbooks to determine the effect of an employer's statement of conditions so far as limiting or altering what otherwise would be employment at-will. In *Watson v. Idaho Falls Consolidated Hospitals, Inc.*, 111 Idaho 44, 720 P.2d 632 (1986), this Court held that traditional contract analysis is inadequate to deal with the realities of the workplace and that unilateral contract analysis is the proper approach. The employer argued that handbooks could not constitute a contract because there was no mutuality of obligation. However, the Court reasoned as follows:

> [T]he manual is an offer that seeks the formation of a unilateral contract—the employees' bargained-for action needed to make the offer binding being their continued work when they have no obligation to continue. The unilateral contract analysis is perfectly adequate for that employee who was aware of the manual and who continued to work intending that continuation to be the action in exchange for the employer's promise....

*Watson*, 111 Idaho at 48, 720 P.2d at 636. (citations omitted).

In *Watson*, the Court concluded that the hospital manual and employee handbook

were part of the employment contract and the reasons for which the employee could be terminated were limited by those documents. The fact there was no bargained for exchange between FMC and Crea does not preclude a determination that the preexisting employment at-will was modified to limit the basis upon which Crea could be terminated. On the other hand *Watson* does not compel the conclusion that the use of the probation by FMC surrendered its right to treat Crea as an employee at-will.

In considering the question of how an employment at-will may be modified the district court relied upon *Raedlein* in which the dispositive factor was a disclaimer contained in the employment handbook which made this statement: "NEITHER THIS HANDBOOK NOR ANY OF THE COMPANY'S POLICIES OR BENEFIT PLANS SHOULD BE CONSIDERED A CONTRACT FOR PURPOSES OF EMPLOYMENT OR PAYMENT OF COMPENSATION OR BENEFITS." *Raedlein*, 129 Idaho at 630, 931 P.2d at 624. The disclaimer precluded the terms of the handbook from becoming an implied contract or changing the employee's at-will status.

The district court also relied upon the Court of Appeals' decision in *Parker v. Boise Telco Federal Credit Union*, 129 Idaho 248, 923 P.2d 493 (Ct.App.1996), which held that the employer could unilaterally modify an employee manual, changing the status of the employees to at-will. In *Parker*, there were two employee manuals—an original, which gave a list of grounds for termination and a revised manual which provided that employment was at-will. The Court of Appeals based its holding that the employee manual could be unilaterally modified upon the following four facts: (1) the original manual was unilaterally modified; (2) the revised manual was a copy of the manual distributed to the employee approximately one year before she was discharged; (3) the employee signed an acknowledgment of having received the revised manual; (4) the acknowledgement sheet stated that the revised manual was not a contract, that the employer reserved the right to unilaterally alter the manual and

that the employment could be terminated at any time with or without notice or cause. *Parker*, 129 Idaho at 254, 923 P.2d at 499.

The district court reasoned that Crea's case was similar to the *Raedlein* and *Parker* insofar as the terms of the Crea's probation could be imposed without altering the employee's at-will status. This reasoning is supported by the reasoning in *Mudlitz v. Mutual Service Insurance Companies*, 75 F.3d 391 (8th Cir.1996), in which the circuit court considered an action brought by an employee against her former employer for breach of contract, breach of covenant of good faith and fair dealing, and misrepresentation. In *Mudlitz*, the employee received a similar probationary notice which stated in relevant part:

Your behaviors are actions of serious resistance to authority. We will review your behavior and performance again in thirty days. If your current behavior and performance continue in this unacceptable manner, this will be grounds for termination at that time. If your behavior and performance deteriorates ... your employment relationship ... may be terminated prior to the end of the thirty day performance period.

*Id.* at 392–93. The employee argued that this disciplinary notice created a contract modifying the at-will arrangement. The circuit court noted that the employee cited no state decision indicating that the at-will contract can be reformed to a terminable-for-cause agreement as the result of the issuance of a disciplinary warning to one employee, while other similar employees remain terminable "at will." The court stated "[n]othing in the language or circumstances of the Performance Warning here reasonably creates an inference that [the employer] was offering Mudlitz a contract which provided her with greater rights than she had under the Employee Handbook." *Id.* at 394.

The facts of this case lead to the conclusion that the probation was nothing more than a disciplinary notice and that no contract or promise arose from that disciplinary action. The action by FMC did not modify the employment at-will. The so-called probation set goals and a program defining Crea's responsibilities because of perceived deficiencies. The probation was not meant to extend

greater rights to an employee with whom they were dissatisfied. FMC did not surrender its right to terminate Crea without cause.

## V.

## FMC IS NOT ENTITLED TO ATTORNEY FEES PURSUANT TO I.C. § 12–120.

■ Idaho Code § 12–120 provides for reasonable attorney fees, calculated as costs, to be awarded to the prevailing party in a civil action. The district court did not award attorney fees, but only costs. FMC argues that because § 12–120 is mandatory in nature, it was error not to award FMC attorney fees. Crea responds that attorney fees were properly denied because FMC did not brief any attorney fee request, did not cite a statute to the district court as a basis for attorney fees, did not request attorney fees in its cost bill, and did not file any affidavit from which the court could establish the basis of an award of attorney fees. Crea maintains that this inaction is fatal to FMC's attorney fees request, pursuant to I.R.C.P., Rule 54. Crea cites *Perkins v. U.S. Transformer West*, 132 Idaho 427, 974 P.2d 73 (1999), *Bingham v. Montane Resource Associates*, 133 Idaho 420, 987 P.2d 1035 (1999), and *Devine v. Cluff*, 110 Idaho 1, 713 P.2d 437 (Ct.App.1985). Crea is correct.

Although FMC argues that it requested an award of attorney fees in its brief for summary judgment, a generalized request for an award of attorney fees is not enough. This Court has held that "it is incumbent on the moving party to assert the grounds upon which it seeks an award of attorney fees. The district judge is not empowered to award fees on a basis not asserted by the moving party." *Bingham*, 133 Idaho at 424, 987 P.2d at 1039. Because FMC provided the district court with no specific basis for awarding attorney fees, it was not an abuse of discretion for the district court to decline to award such fees.

## VI.

## FMC IS NOT ENTITLED TO ATTORNEY FEES PURSUANT TO I.C. § 12–121.

■ Idaho Code § 12–121 provides that a judge may award reasonable attorney fees to the prevailing party in a civil action where an action has been brought, pursued or defended frivolously, unreasonably, or without foundation. FMC claims fees under this code section for proceedings in the district court and on appeal. Again, FMC did not cite to authority in its request for attorney fees in the cost bill and did not file an affidavit in the district court from which the Court could establish the basis of an award of attorney fees. The appeal was not frivolous or unreasonable. FMC is not entitled to attorney fees in the district court or on appeal.

## VII.

## CONCLUSION

The decision of the district court is affirmed. Costs on appeal are awarded to FMC. No attorney fees are allowed.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.

