**Michael J. LORD, Plaintiff,**

v.

**SWIRE PACIFIC HOLDINGS, INC., Defendant.**

**No. CV01–632–S–EJL.**

United States District Court, D. Idaho.

March 12, 2002.

---

Julie Klein Fischer, Sam Johnson, White Peterson, Nampa, ID, for plaintiff.

Brad P. Miller, Hawley, Troxell, Ennis & Hawley, Boise, ID, Brent O. Hatch, Heather A. McDougald, Salt Lake City, UT, for defendant.

## ORDER

LODGE, District Judge.

Plaintiff Michael G. Lord brings this action against his former employer, Defendant Swire Pacific Holdings, Inc. ("Swire"), alleging three causes of action arising from his employment termination. Specifically, in count one Lord alleges that his termination is a breach of employment contract and a breach of the covenant of good and fair dealing, in count two Lord alleges that his termination is in violation of public policy, and in count three Lord alleges that his termination resulted in the intentional and/or negligent infliction of emotional distress. Swire has filed a Motion to Dismiss in accordance with Federal Rule of Civil Procedure 12(b)(6), in which it seeks dismissal of all three counts. The Motion to Dismiss is now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

## Factual Background[1]

Lord alleges that after he filed a grievance against two supervisors for abusive behavior, he was terminated in retaliation for notifying Swire of the supervisors' offensive conduct. Lord contends that "the manner in which Swire terminated [him] was in derogation of Swire's own practices and policies and in violation of the manner in which Swire has interpreted and followed its own employee handbook and manuals." (Compl. at ¶ 16). He also alleges that "the retaliatory motivation behind the discharge contravenes public policy and the discharge was carried out in breach of the covenant of good faith and fair dealing implied in the relationship between employer and employee." (Compl. at ¶ 17).

## Standards

On a motion to dismiss, the Court's review is generally limited to the contents of the complaint. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir.1996).

---

1. The facts are recited as set forth in the complaint since on a motion to dismiss the

Court must presume that the facts Lord alleges in his complaint are true.

But where, as here, Lord's complaint necessarily relies on an underlying document, the employee handbook, and neither party disputes its authenticity, the Court may consider it also, regardless of whether it has been attached to the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.), *cert. denied*, 525 U.S. 1001, 119 S.Ct. 510, 142 L.Ed.2d 423 (1998). The Court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." *Warshaw*, 74 F.3d at 957. The Court is not required, however, to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999).

 This Court, sitting in diversity, must apply the substantive law of Idaho, as interpreted by the Idaho Supreme Court. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 920 (9th Cir.1988). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Air–Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990). In this regard, the federal court must follow an intermediate state court decision unless other persuasive authority convinces the federal court that the state supreme court would decide otherwise. *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.1988). The Court may "look[] to well-reasoned decisions from other jurisdictions" as a source for other persuasive authority. *Takahashi v.*

*Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980).

## Discussion

### Count One

 With respect to count one, Swire contends that Lord fails to state a claim upon which relief can be granted because Lord does not allege facts that, if proven, would establish a employment contract existed between the parties. "It is settled law in Idaho that, unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party." *Raedlein v. Boise Cascade Corp.*, 129 Idaho 627, 931 P.2d 621, 623 (1996) (quoting *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 874 P.2d 520, 523–24 (1994)). In an at-will relationship "[e]ither party may terminate the relationship at any time for any reason without incurring liability." *Id.*

 Lord does not allege in his complaint that any express employment contract exists between the parties. However, a "limitation on the at-will relationship may be express or implied." *Id.* "A limitation will be implied when, from all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either party's right to terminate the relationship was limited by the implied in fact agreement." *Id.* As recounted above, Lord alleges that in this case "the manner in which Swire terminated [him] was in derogation of Swire's own practices and policies and in violation of the manner in which Swire has interpreted and followed its own employee handbook and manuals." (Compl. at ¶ 16). This allegation suggests an implied limitation on Lord's at-will status. Swire, on the hand, maintains that the language of the employee handbook precludes finding any

type of implied contractual relationship between the parties. "Whether a particular handbook [permits the formation of an implied contract] may be a question of fact, unless the handbook 'specifically negates any intention on the part of the employer to have it become a part of the employment contract.'" *Raedlein,* 931 P.2d at 623 (quoting *Mitchell,* 874 P.2d at 523–24).

Here, the relevant terms of Swire's employee handbook include the following:

### AT–WILL STATUS

By accepting employment with the Company, **you acknowledge that you are employee "at-will."** This means that **your employment** with the Company is completely voluntary, is for an indefinite term and **may be terminated by you or the Company at any time for any or no reason and with or without notice. Your status as an employee "at-will" may not be changed or modified by any practice or procedure of the Company,** by any practice or procedure of the industry, **or by any employee handbook** or other document issued by the Company **except by a written employment contract signed by the Company's President and by you** that pertains solely to your employment and **that specifically revokes your employment "at-will" status.**

(Aff. of Brad P. Miller, Ex. A at 3 (emphasis added)). Further, the final paragraph of the employee handbook once again reiterates that the "handbook is not intended to and does not form a contract of employment" and that an employee "may be terminated by . . . the Company at any time for any or no reason." (Aff. of Brad P. Miller, Ex. A at 14).

In *Raedlein,* the Idaho Supreme Court was confronted with very similar language from an employee manual and handbook that, as here, expressly stated that (1) employment was at-will, (2) the company's policies and/or the terms of the manu-

al/handbook could not change the employee's at-will status, and (3) a contract for employment could only be created by a specific written agreement. *Raedlein,* 931 P.2d at 623–24. According to the Idaho Supreme Court, those "provisions of the manual and the handbook . . . negate any intention by the employer that the manual, the handbook, or other policies become part of the employment contract." *Id.* 931 P.2d at 623. Therefore, the Idaho Supreme Court concluded that as a matter of law the plaintiffs had failed to show that "an implied contract chang[ed] the employee's at-will status." *Id.* at 624.

Despite Lord's efforts to distinguish *Raedlein* and other, comparable Idaho case law, the Court finds nothing unique to Lord's complaint so as to justify a deviation from those holdings. Where, as here, an employee handbook "specifically negates any intention on the part of the employer to [create an] employment contract," the Court must dismiss the employee's contract based claim. *Id.* at 623–24. Similarly, because the terms of Swire's employee handbook did not become a part of an employment contract, Lord's claim based on a breach of the covenant of good and fair dealing must also fail. *See, e.g., id.* at 624. Accordingly, count one will be dismissed.

*Count Two*

■ As explained above, at-will employment generally means that either party may terminate the relationship at any time for any reason without incurring liability. However, an exception to this rule allows an employee to claim damages for wrongful discharge when the motivation for the firing contravenes public policy. *Hummer v. Evans,* 129 Idaho 274, 923 P.2d 981, 986 (1996). In Idaho, "the public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or

who exercise certain legal rights or privileges." *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 799 P.2d 70, 74 (1990).

 Although Lord alleges that "the retaliatory motivation behind the discharge contravenes public policy," (Compl. at ¶ 17), this type of alleged wrong does not fit within the definition of public policy under current Idaho cases. Specifically, Lord's conduct was not a refusal to commit an unlawful act, a performance of an important public obligation, or an exercise of a legal right or privilege. Likewise, the behavior for which Lord seeks protection lacks the support of a legislative pronouncement. *See, e.g., Sorensen,* 799 P.2d at 74 (rejecting employee's claim that employer's failure to negotiate employment conditions is a violation of public policy because "the claim that failure to negotiate is as a violation of public policy, in the absence of a statute requiring employers to bargain with employees, is not supported by our prior cases"). The Court is unable to find a clearly articulated legislative statement of public policy which would bring Lord's conduct within the ambit of the public policy exception to at-will employment. In the absence of case law or statutory language to support Lord's claim, the Court finds no basis for expanding the Idaho law that defines the public policy exception to the at-will doctrine.[2] *See, e.g., Dicomes v. State,* 113 Wash.2d 612, 782 P.2d 1002, 1011–12 (1989) (explaining why plaintiff's termination was not in contravention of a public policy by noting that "plaintiff's arguably good faith belief in the righteousness of her conduct is too tenuous a ground upon which to base a claim for wrongful discharge .... we are cognizant of the need to avoid frivolous lawsuits and employer liability when the employee's conduct is merely praiseworthy from a subjective standpoint, or when the public may derive some remote benefit"). Therefore, count two will be dismissed.

*Count Three*

 In count three, Lord alleges that his termination resulted in the intentional and/or negligent infliction of emotional distress. Lord alleges he has suffered "mental anguish" and "emotional distress." As Swire correctly notes, under Idaho case law, a claim for negligent infliction of emotional distress is legally insufficient if, as here, the plaintiff's allegation of "mental anguish" and/or "emotional distress" is not "accompanied by physical injury or physical manifestations of injury." *See, e.g., Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37, 42–43 (1990). As to Lord's claim for intentional infliction of emotional distress, the Court concludes that the allegations supporting this claim, (*see* Pl's Mem. in Opp'n at 17 (citing Compl. at ¶ 9)), are inadequate as a matter of law to demonstrate the requisite extreme and outrageous conduct, as defined by the Idaho cases.[3] *See, e.g., Brown,* 801 P.2d at 41–42.

For the above reasons, the Court concludes that even accepting Lord's version of the facts as true, as a matter of law, there is no implied limitation on Lord's at-will status so as to support a claim based on breach of contract or a breach of the covenant of good and fair dealing. Nor is

---

**2.** The Court is mindful that "[i]n a diversity case ... federal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law .... [the federal court's] role is to apply the current law of the jurisdiction, and leave it undisturbed." *City of Phila-*delphia *v. Lead Indus. Ass'n,* 994 F.2d 112, 123 (3d Cir.1993) (citations omitted).

**3.** Significantly, Lord cites no cases to support the contention that Swire's alleged behavior is sufficient under Idaho law to state a claim for intentional infliction of emotional distress. (*See* Pl's Mem. in Opp'n at 16–18).

Swire's discharge of Lord in contravention of a public policy. Finally, Lord has not made out a claim based on the intentional and/or negligent infliction of emotional distress. Swire is therefore entitled to the dismissal of Lord's claims and, accordingly, the Court will grant the Motion to Dismiss.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that Defendant's Motion to Dismiss (Docket No. 5) is **GRANTED** and this case is **DISMISSED** in its entirety.

**IT IS FURTHER ORDERED** that the telephonic scheduling conference set for March 21, 2002 is **VACATED.**