75 P.3d 733

**Michael J. EDMONDSON,**
**Plaintiff–Appellant,**

v.

**SHEARER LUMBER PRODUCTS, a division of Bennett Lumber Products, Inc., an Idaho corporation, Defendant–Respondent.**

No. 28541.

Supreme Court of Idaho,
Boise, April 2003 Term.

July 23, 2003.

Rehearing Denied Sept. 4, 2003.

Starr Kelso, Coeur d'Alene, argued for appellant.

Keller W. Allen, Spokane, WA, argued for respondent.

WALTERS, Justice.

This is a wrongful termination of employment case. The employee appeals from the district court's dismissal of the action upon the employer's motion for summary judgment. We affirm.

## FACTS

Michael Edmondson was employed by Shearer Lumber Products for twenty-two years at the company's Elk City mill. In 1999, he became a salaried employee and on his most recent performance review, he received a rating of "very good." However, on February 15, 2000, the plant manager, David Paisley, following directions from his superiors fired Edmondson, by reading a statement that informed Edmondson: "Because of your continued involvement in activities that are harmful to the long term interests of Shearer Lumber Products, we are terminating your employment immediately."

It was well known at Shearer Lumber that Edmondson was extensively involved in the community and regularly attended public meetings concerning matters of public interest and concern, such that he was recognized with the Idaho GEM Citizen Award by then Governor Batt. In January of 2000, Edmondson attended a public meeting of a group known as Save Elk City. One of the leaders of the group was the resource manager at Shearer Lumber, Dick Wilhite, who at the group meetings encouraged public support for the proposal that Save Elk City had submitted to the Federal Lands Task Force Working Group for consideration as to how best to manage the Nez Perce National Forest. Edmondson attended the group meetings, but he made no comments on the group's proposal. Nor did he discuss his opinions regarding the Save Elk City proposal at work with other employees.

Shearer Lumber did not openly campaign for the Save Elk City proposal, but Edmondson later learned from Wilhite that the proposal submitted in the name of Save Elk City was the project of Shearer Lumber's owner, Dick Bennett. At that time, Wilhite and Edmondson discussed the various outstanding proposals that might be competing for the Task Force's recommendation to the State Land Board, but Edmondson did not declare a preference for any of the proposals.

Shearer Lumber obtained information that Edmondson had attended meetings of the Task Force, had contacted someone in the administration of the Task Force, and was opposed to the collaborative project that Shearer had sponsored and submitted on behalf of the Save Elk City group. Edmondson was twice called into meetings at Shearer Lumber, where he claimed he was subjected to intimidation and pressure from Wilhite, Paisley, and John Bennett, Shearer's general manager. It was made clear that Edmondson was *not* to form any opinions on or make any statements to the Federal Lands Task Force. In effect, Edmondson was warned that any opposition to the collaborative project that was contrary to Shearer's interest would lead to serious consequences. Edmondson was informed at the February 2, 2000, meeting that Shearer Lumber wanted all of its employees to support the projects the mill was involved in, if they wanted to avoid serious consequences that would result if the project was derailed or negatively impacted.

John Bennett testified in his deposition that the reason Edmondson was terminated was that Edmondson was opposing the project that Shearer Lumber Products supported, in direct conflict with the company's goals that could ultimately jeopardize a Task Force decision favorable to Shearer's interests. Bennett also attributed to Edmondson contact with the Task Force administration, although it was Edmondson's wife, Jamie, who had made inquiries to the Task Force. Edmondson speculated further as to the reason for his termination, which occurred the day after federal agents impounded some logs stored on the Shearer Mill site, as part of a U.S. Forest Service investigation in which Jamie Edmondson had also played a role. However, John Bennett testified that the logs belonged to a third party, and Shearer had no interest in how the logs were handled.

## PROCEDURAL HISTORY

Edmondson brought an action against Shearer Lumber for wrongful termination of employment and demanded a jury trial. Edmondson moved for partial summary judgment on the claim of termination of employment, asserting breach of the public policy exception to the employment-at-will doc-

**176**

trine. Shearer Lumber moved for summary judgment, claiming that Edmondson, who was at all times material to the complaint an employee-at-will, had no legally cognizable claim regarding his termination.

On August 2, 2001, the district court heard the cross-motions for summary judgment, along with Edmondson's motion to amend the complaint. The district court awarded summary judgment to Shearer, holding that Edmondson's allegations did not fall within the limited public policy exception recognized in Idaho. The district court denied Edmondson's motion to amend the pleadings and denied Edmondson's motion to reconsider its summary judgment decision. This appeal followed.

## STANDARD OF REVIEW

■■■■ Summary judgment is only appropriate when genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c); *Moss v. Mid–American Fire and Marine Ins. Co.,* 103 Idaho 298, 302, 647 P.2d 754, 758 (1982). In determining whether material issues of fact exist, all allegations of fact in the record and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *City of Kellogg v. Mission Mountain Interests Ltd., Co.,* 135 Idaho 239, 240, 16 P.3d 915, 919 (2000). When a jury is to be the finder of fact, summary judgment is not proper if conflicting inferences could be drawn from the record and reasonable people might reach different conclusions. *State Dep't of Fin. v. Res. Serv. Co., Inc.,* 130 Idaho 877, 880, 950 P.2d 249, 252 (1997).

## DISCUSSION

### I.

■■■■ Edmondson argues that summary judgment was improperly granted because issues of material fact exist that must be resolved by a jury, such as which meetings he attended, which proposal he endorsed, and which of his actions constituted the "continued involvement in activities harmful to the long term interests of Shearer." No dispute of fact is "material," however, unless it relates to an issue that is disclosed by the pleadings. *Harms Memorial Hospital v. Morton,* 112 Idaho 129, 730 P.2d 1049 (Ct. App.1986), *citing Argyle v. Slemaker,* 107 Idaho 668, 691 P.2d 1283 (Ct.App.1984). The tendered factual issues as to the reasons for Edmondson's discharge are not material to Edmondson's claims because, as the district court held, Edmondson was an at-will .employee, who could be terminated by his employer at any time for any reason without creating liability. *See Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 P.2d 744 (1989); *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985). The alleged factual issues concerning the circumstances of the firing, if they establish that Edmondson has asserted a policy exception to the at-will doctrine, are questions of law. *See Quiring v. Quiring,* 130 Idaho 560, 944 P.2d 695 (1997). Thus, we freely review whether the record shows, without a genuine dispute of fact, that the public policy asserted by Edmondson is appropriate as a public policy exception to the employment at-will doctrine.

*A. The district court did not err in granting summary judgment on the claim of breach of public policy exception to the at-will doctrine.*

■■■■ In Idaho, the only general exception to the employment at-will doctrine is that an employer may be liable for wrongful discharge when the motivation for discharge contravenes public policy. *MacNeil v. Minidoka Memorial Hosp.,* supra; *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977); *Anderson v. Farm Bureau Mut. Ins. Co. of Idaho,* 112 Idaho 461, 469, 732 P.2d 699, 707 (Ct.App.1987). The purpose of the exception is to balance the competing interests of society, the employer, and the employee in light of modern business experience. *Crea v. FMC Corp.,* 135 Idaho 175, 178, 16 P.3d 272, 275 (2000). The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges. *Sorensen v. Comm Tek, Inc.,* 118 Idaho 664, 668, 799 P.2d 70, 74 (1990).

Public policy of the state is found in the constitution and statutes. *Boise–Payette Lumber Co. v. Challis Independent School Distr. No. 1*, 46 Idaho 403, 268 P. 26 (1928). "In the absence of case law or statutory language ..., the Court finds no basis for expanding the Idaho law that defines the public policy exception to the at-will doctrine." *Lord v. Swire Pacific Holdings, Inc.*, 203 F.Supp.2d 1175, 1180 (D.Idaho 2002).

 Courts have recognized that public policy expressed in the constitution and the statutes of the state may serve as a basis for finding an exception to the employment at-will doctrine. *See generally* 82 Am.Jur.2d *Wrongful Discharge* § 19, at 692 (1992). The First Amendment prohibits the government from restraining or abridging freedom of speech and assembly. Article I, § 9 of the Idaho Constitution also guarantees the right of free speech: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty." Article I, § 10 of the Idaho Constitution guarantees the right of freedom of association: "The people shall have the right to assemble in a peaceful manner, to consult for their common good; to instruct their representatives, and to petition the legislature for the redress of grievances." The First Amendment and Article I, §§ 9 and 10 of the Idaho Constitution do not apply to alleged restrictions imposed by private parties, however. *See generally Roberts v. United States Jaycees*, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462, 471 (1984).

Edmondson maintains that he was wrongfully terminated because he exercised his constitutionally protected rights of free speech and association. He argues that the public policy at issue prohibits restrictions on free speech and association. He relies on *Gardner v. Evans*, 110 Idaho 925, 719 P.2d 1185 (1986) and *Lubcke v. Boise City/Ada County Housing Authority*, 124 Idaho 450, 860 P.2d 653 (1993), which followed the two-step analysis of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), in determining initially whether the speech involves a matter of public concern and, if so, applying a balancing test. These cases, however, all deal with governmental restrictions on free speech and associative rights of employees of public agencies, which are inapplicable in the private employment context in which Edmondson worked. The prevailing view among those courts addressing the issue in the private sector is that state or federal constitutional free speech cannot, in the absence of state action, be the basis of a public policy exception in wrongful discharge claims. See *Tiernan v. Charleston Area Medical Center, Inc.*, 203 W.Va. 135, 146–47, 506 S.E.2d 578, 589–90 (1998), and cases cited therein.

Edmondson argues that I.C. § 18–7901[1] expresses a public policy extending constitutional free speech protection to relationships between private employers and its employees. The district court did not make a finding specifically addressing I.C. § 18–7901, but even if it had, the facts alleged by Edmondson regarding his termination fall far short of describing conduct that was harassing, intimidating or threatening and based upon the descriptive list set forth in the statute.[2]

Finally, Edmondson urges that public policy is implicated wherever the power to hire and fire is utilized to dictate the terms of an employee's political activities and associations, relying on *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 900 (3rd Cir.1983). There the court held that an important public policy was at stake and that Novosel's allegations that the employer coerced political activity stated a wrongful discharge claim. *Id.* However, the public policy adopted in *Novosel* has not been endorsed by any other court, not even the Pennsylvania state courts within the federal district of the Circuit that issued

---

1. I.C. § 18–7901 provides as follows;
The legislature finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment, and physical harm caused by the activities of groups and individuals.

2. We do not suggest that the legislature's descriptive list should be deemed to exclude other well-recognized protected classes such as age, gender, or persons with mental or physical disabilities.

*Novosel.* We likewise decline to extend Idaho's public policy exception through the adoption of *Novosel.*

■ Accordingly, we hold that an employee does not have a cause of action against a private sector employer who terminates the employee because of the exercise of the employee's constitutional right of free speech. The district court's dismissal of the claim of breach of public policy exception to the at-will doctrine is affirmed.

*B. The district court properly rejected the claim for termination in violation of public policy based on Edmondson's wife's involvement in a federal investigation related to the impoundment of logs on Shearer's mill site.*

■ Edmondson asserted that his discharge was implicitly motivated by his wife's involvement with logs that were impounded by federal authorities the day before he was terminated. Edmondson produced testimony presented by his wife in her own unemployment compensation proceeding following her voluntary termination of employment with Shearer, showing that she had spoken with a U.S. Forest Service investigator about logs located on Shearer Lumber's property that purportedly belonged to a third party. Although Shearer at first claimed a lien upon the logs for storage, and then withdrew its claim of lien, there was no allegation or evidence of wrongdoing by Shearer. Edmondson contends that these facts are sufficient to raise a genuine issue for trial on his complaint for wrongful discharge in violation of public policy against retaliation for his wife's conduct.

We disagree. Even if a cause of action for damages should exist as relief for alleged retaliatory discharge in contravention of public policy based upon conduct of the employee's spouse, *see e.g., Bammert v. Don's Super Valu, Inc.,* 254 Wis.2d 347, 356, 646 N.W.2d 365, 370 (2002),[3] the dearth of evidence in this case fails to present facts showing either that Shearer committed any wrongful act with regard to the logs or that there was any causal connection between Edmondson's

wife's contact with the investigator and Shearer's decision to discharge Edmondson from its employment. The district court did not err in rejecting Edmondson's claim of retaliatory discharge.

## II.

*The district court properly refused to address the breach of implied-in-fact limitations to the at-will relationship on summary judgment.*

■ The district court noted that neither of the two claims in Edmondson's complaint asserted a breach of any alleged implied-in-fact limitations to the at-will employment relationship. In ruling on the summary judgment motion, therefore, the district court determined not to address the claim.

Edmondson alleges that limitations on Shearer Lumber's right to terminate him could be found (a) in a letter sent by Shearer Lumber to him after his firing, which discussed vacation pay that was due him as a salaried employee, and (b) by virtue of Edmondson's subjective understanding that Shearer Lumber could only terminate salaried employees like him with certain limitations and for just cause. Edmondson contends that a genuine issue of material fact exists as to whether there was any reasonable communication to him of an unlimited at-will status. More importantly, Edmondson admits that he failed to assert the claim in his complaint, but he argues that he was not barred from asserting additional claims in response to the defendant's motion for summary judgment.

■ The authority upon which Edmondson relies, *Bluestone v. Mathewson,* 103 Idaho 453, 649 P.2d 1209 (1982), and *Callenders, Inc. v. Beckman,* 120 Idaho 169, 814 P.2d 429 (Ct.App.1991), speaks to when an affirmative defense may properly be raised and thus provides no basis for a different result on this issue. A cause of action not raised in a party's pleadings may not be considered on summary judgment nor may it be considered for the first time on appeal. *See Beco Const. v. City of Idaho Falls,* 124

---

**3.** We expressly decline to fully decide this issue at this time.

Idaho 859, 865, 865 P.2d 950, 956 (1993). Accordingly, the district court correctly declined to rule on the implied-in-fact claim at the summary judgment stage.

### III.

*The district court did not err in denying Edmondson's motion to amend.*

■ Following the decision of the district court on summary judgment, Edmondson filed a motion to amend his complaint to assert a breach of contract claim and a breach of the covenant of good faith and fair dealing. The district court denied the motion after a hearing, holding that the record did not support a claim for breach of an implied-in-fact contract. The district court also held that the record failed to show that the at-will relationship was somehow modified or did not apply to Edmondson.

■ The decision to grant or refuse permission to amend is left to the sound discretion of the trial court where a party proposes to amend its complaint when the record contains no allegation, which, if proven, would entitle the party to the relief claimed. *Hines v. Hines,* 129 Idaho 847, 934 P.2d 20 (1997). A limitation of an at-will employment will be implied when, from all the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either's party's right to terminate the relationship was limited by the implied-in-fact agreement. *Mitchell v. Zilog, Inc.,* 125 Idaho 709, 712, 874 P.2d 520, 523 (1994). A plaintiff's subjective understanding is insufficient to establish an express or implied agreement limiting at-will employment. *Arnold v. Diet Center, Inc.,* 113 Idaho 581, 746 P.2d 1040 (Ct.App.1987). Edmondson's personal belief that the company would not terminate him for attending public meetings, which the company allowed him to attend, or, would not terminate him without good cause, does not create limitations on Shearer's right to terminate him at will.

■ Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons why an employee may be discharged, the employee is at-will and can be terminated for any reason or no reason at all. *Thomas v. Medical Center Physicians, P.A.,* 138 Idaho 200, 61 P.3d 557 (2002); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977). Furthermore, as the district court ruled, the employee handbook expressly defined the relationship as at-will and negates Edmondson's claim of intent to restrict the grounds for discharge. *See Moser v. Coca-Cola Northwest Bottling Co.,* 129 Idaho 709, 931 P.2d 1227 (Ct.App.1997). As a matter of law, therefore, the plaintiff failed to show that an implied contract changed the employee's at-will status. *Raedlein v. Boise Cascade Corp.,* 129 Idaho 627, 630, 931 P.2d 621, 624 (1996). The district court also held that the covenant of good faith and fair dealing does not prohibit an employer from terminating an employee at-will. We agree. *See Farnworth v. Femling,* 125 Idaho 283, 288, 869 P.2d 1378, 1384 (1994), *citing Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 627, 778 P.2d 744, 749 (1989). We find no error in the district court's decision denying the Edmondson's motion to amend.

### IV.

*The district court did not err in dismissing Edmondson's claim of intentional infliction of emotional distress.*

■ In Idaho, four elements are necessary to establish a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Curtis v. Firth,* 123 Idaho 598, 601, 850 P.2d 749, 751 (1993). Justification for an award of damages for emotional distress seems to lie not in whether distress was actually suffered by a plaintiff, but rather the quantum of outrageousness of the defendant's conduct. *Brown v. Fritz,* 108 Idaho 357, 362, 699 P.2d 1371, 1376 (1985). "Although a plaintiff may in fact have suffered extreme emotional distress ... no damages are awarded in the absence of extreme and outrageous conduct by a defendant." *Id.*

Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress. *See Rasmuson v. Walker Bank & Trust Co.*, 102 Idaho 95, 100, 625 P.2d 1098, 1103 (1981).

 Summary judgment is proper when the facts allege conduct of the defendant that could not reasonably be regarded as so extreme and outrageous as to permit recovery for intentional or reckless infliction of emotional distress.

It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Restatement (Second) of Torts, § 46 comment h (1965).

The facts before the court were that Edmondson, a twenty-two-year employee with an excellent work record, was taken to his office and to his locker to collect his belongings and then escorted off the premises. Edmondson argues that Shearer's conduct was an abuse of its power as the employer,[4] and that its knowledge of Edmondson's susceptibility to emotional distress from being fired,[5] should be held to be so extreme and outrageous as to make Shearer liable. Finding that "the circumstances of Edmondson's discharge may, in the minds of some, reflect poorly on Shearer Lumber," the district court nevertheless concluded that the manner of discharge and the attendant circumstances in Edmondson's case "do not rise to the level of creating a jury issue on his intentional infliction of emotional distress claim."

 Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of "atrocious" and "beyond all possible bounds of decency" that would cause an average member of the community to believe it was "outrageous." *See Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 888 P.2d 1375 (Ariz.App.1994), *quoting Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). Where the defendant has done no more than to insist upon his rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress, liability for intentional infliction of emotional distress does not lie. Restatement § 46, comment g. The dismissal of Edmondson's claim for intentional infliction of emotional distress, therefore, is affirmed.

### CONCLUSION

The employer acted within its rights to discharge Edmondson, who was an at-will employee subject to termination for any reason or for no reason. Because Edmondson did not establish a policy exception to temper the at-will doctrine, neither the method of termination nor its justification are material. There were no facts in evidence supporting a claim of an implied-in-fact contract, and no facts of extreme and outrageous conduct rising to the level of creating a jury issue on the intentional infliction of emotional distress claim.

 The order granting Shearer Lumber summary judgment is hereby affirmed. We decline to award attorney fees pursuant to I.C. § 12–121, based on our conclusion that plaintiff's legal arguments were not so plainly fallacious as to be deemed frivolous, where it was supported by a good faith argument for the extension or modification of the law in

---

**4.** Comment e of the Restatement Second of Torts, § 46 provides that the extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.

**5.** Comment f of the Restatement Second of Torts, § 46 provides that the extreme and outrageous

character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

Idaho. *See Hanf v. Syringa Realty, Inc.,* 120 Idaho 364, 816 P.2d 320 (1991). Costs are awarded to the respondent, Shearer Lumber Products.

Justices SCHROEDER, EISMANN and Justice Pro Tem SCHWARTZMAN, concur.

Justice KIDWELL, dissenting.

I wholeheartedly support the presumption that employment in Idaho is "at-will" unless otherwise provided. Unlike the majority, however, I would hold that there is a narrow, but important, public policy exception to the at-will presumption for certain exercises of one's first amendment rights. Therefore, I respectfully dissent.

In *Sorensen v. Comm Tek, Inc.,* this Court stated the basic tenet of employment-at-will:

Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability.

118 Idaho 664, 666, 799 P.2d 70, 72 (1990) (quoting *Spero v. Lockwood, Inc.,* 111 Idaho 74, 75, 721 P.2d 174, 175 (1986)). Public policy exceptions to employment at-will limit "the employer's right to discharge an employee without cause when the discharge would violate public policy." *Crea v. FMC Corp.,* 135 Idaho 175, 178, 16 P.3d 272, 275 (2000). The public policy exception protects at-will employees who refuse to commit illegal acts, perform important public duties, or who exercise certain rights and privileges. *Sorensen,* 118 Idaho at 668, 799 P.2d at 74 (*cited in Crea,* 135 Idaho at 178, 16 P.3d at 275). The public policy exception serves the purpose of balancing the often competing interests of society, the employer, and the employee. *Crea,* 135 Idaho at 178, 16 P.3d at 275.

As the majority has stated, public policy may be imbedded in statutes. *See, e.g., Watson v. Idaho Falls Consol. Hosps., Inc.,* 111 Idaho 44, 720 P.2d 632 (1986). I believe that statutes are not the only place in which one may find public policy. Indeed, one may find

the most significant public policies in this state and our nation in the Idaho Constitution and the Constitution of the United States. Thus, I would hold that certain constitutional public policies deserve protection and vindication through the public policy exception to at-will employment even in the absence of a statutory enactment.

One such policy that deserves protection in the at-will employment context is the policy of encouraging participation and debate regarding issues of public concern. The Idaho Constitution makes clear that "[a]ll political power is inherent in the people. Government is instituted for their benefit, and they have the right to alter, reform, or abolish the same whenever they may deem it necessary...." Idaho Constitution Art. 1, § 2. In order to exercise the political power inherent in the people, the Idaho and United States constitutions endow individuals with the liberty to speak freely and participate in vigorous public debate. United States Constitution, Amend. 1; Idaho Constitution Art.1, § 9. Allowing employers to terminate employment based on an individual's association and speech regarding public issues that may have little or nothing in connection with the employer's business, invites employers to squelch the association, speech, and debate so necessary to our system of government. This is particularly true in the context of the myriad of small Idaho communities with only one or two prominent employers. Thus, I would hold it against public policy to discharge an employee for constitutionally-protected political speech or activities regarding a matter of public concern, provided that such speech or activity does not interfere with the employee's job performance or the business of the employer.

The majority cites to *Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 146–47, 506 S.E.2d 578, 589–90 (1998), for the proposition that absent a state action, the constitutional exercise of free speech is not a public policy exception to at will employment. It is my opinion that even absent a state action, a very narrowly drawn public policy exception to the employment at-will doctrine should apply. That narrowly drawn exception would require a two-step analysis.

First, did the at-will employee's speech impact the employer's business in *any* manner? If so, was the employee terminated because of his or her speech? The free speech public policy exception would apply to at-will employment in the case where the employee's speech does not impact the employer's business and the employee was terminated for the speech. In *Tiernan* the plaintiff was fired because she wrote a letter to the editor criticizing her employer. Under this proposed public policy exception, the plaintiff's speech clearly impacted her employer and her termination was lawful.

In this case, the evidence in the record clearly creates genuine issues of material fact regarding whether Edmondson was terminated for political speech or activities regarding a matter of public concern. Further, the record shows genuine issues regarding whether Edmondson's speech and activities interfered with his job performance or the business of his employer. On these grounds, I would vacate summary judgment and remand this matter for further proceedings.