59 P.3d 990

**Jeanette McKAY, Plaintiff–Respondent,**

v.

**IRELAND BANK, Defendant–Appellant.**

**No. 26942.**

Court of Appeals of Idaho.

Oct. 31, 2002.

Review Denied Dec. 27, 2002.

Jones, Chartered, Pocatello, for appellant. Jack H. Robison argued.

Cooper Larsen, Pocatello, for respondent. Reed W. Larsen argued.

PERRY, Chief Judge.

Ireland Bank appeals from the district court's judgment awarding Jeanette McKay damages, costs, and attorney fees for wrongful termination. We vacate.

## I.

### FACTS AND PROCEDURE

The facts of this case are undisputed. In August 1987, Jeanette McKay began working as a teller for Ireland Bank in Preston.

McKay continued to work there until May 1998, when she was terminated. During her employment with the bank, McKay performed her work in a satisfactory manner and received regular performance raises. At all times during her employment, McKay was an employee at will.

In March 1998, McKay had a discussion with a former branch manager about her intent to run for Franklin County Treasurer. The former branch manager indicated that he had no objection to McKay running for office, but that he did not know what the president of Ireland Bank would do.

After filing a petition to run for county treasurer, McKay informed her current branch manager that she had filed her petition. The current branch manager, like the former branch manager, indicated that she did not know what the president would do.

Approximately two weeks later, McKay was informed by her current branch manager that the bank's president had decided that, if McKay ran for office, she would need to leave the bank two weeks before the primary election or be terminated. Although unknown to McKay, the bank had implemented an unwritten employment policy in 1990 which prohibited bank employees from running for public office while employed by the bank. The bank had previously experienced adverse effects when employees had run for public office. Employees had engaged in "politicking" on the job, had neglected assigned duties, and had shown a lack of interest in their job and in bank customers. The bank's operations experienced disruption. Additionally, the bank had involuntarily become publicly associated with particular candidates or their political parties, which violated the bank's policy to avoid partisan politics. Under the bank's unwritten employment policy, any employee who chose to run for office was required to resign at least two weeks before the primary election or be terminated.

Because of the potential to double her salary and increase her benefits, McKay decided to continue her candidacy for county treasurer and informed the bank of her decision. On May 8, 1998, McKay received a

letter from her branch manager, which indicated that McKay's last day with the bank would be May 11, two weeks prior to the primary election. On May 25, the primary election was held. McKay won the primary and eventually took office.

In a letter dated June 1, 1998, the bank president congratulated McKay on her successful election. On June 8, McKay filed a discrimination claim with the Idaho Human Rights Commission. McKay alleged that the bank had discriminated against her based on her age and gender. The commission investigated and found no basis for McKay's claims. McKay was, however, given the right to bring an action under Idaho law.

On November 10, 1998, McKay filed a complaint with the district court alleging that the bank had discriminated against her because of her age and that she had been wrongfully terminated. On March 10, 2000, the bank filed a motion to dismiss and for summary judgment, arguing that McKay had failed to allege a recognized cause of action and that there were no genuine issues of material fact. After a hearing, the district court took the matter under advisement. The parties submitted a stipulation of facts. The district court granted summary judgment in favor of the bank on the issue of age discrimination and granted summary judgment in favor of McKay on the issue of wrongful termination. The matter of damages was tried before the district court in May 2000. The bank filed a motion to reconsider, requesting that the district court revisit its decision granting summary judgment in favor of McKay. Following a hearing in June 2000, the district court reaffirmed its previous summary judgment order and entered a judgment awarding damages. McKay was awarded over $7,000. The district court also granted McKay an award of over $5,000 in attorney fees and costs.

On appeal, Ireland Bank argues that the district court erred when it granted summary judgment in favor of McKay on the issue of wrongful termination and that it is entitled to attorney fees on appeal. The bank argues that, even if the district court's summary judgment decision on that issue was proper, the district court erred in finding that McKay mitigated her damages between the time she was terminated and the time she took office, erred in awarding McKay the cost of her medical insurance premiums during that same period, and erred in awarding McKay costs and attorney fees associated with this case.

## II.

## ANALYSIS

Both parties in this case acknowledge that McKay was an employee at will when she was terminated by the bank. Neither party disputes the existence of a public policy exception to the at-will employment rule. The dispute in this case centers on whether terminating an employee for running for political office contravenes public policy, sufficient to support a wrongful discharge claim. In granting summary judgment, the district court held that running for office did fall within the public policy exception.

We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App.1986). The facts of this case are not in dispute. The remaining issue before the Court is a matter of law.

When employment is at will, either party may terminate the relationship at any time for any reason without incurring liability. *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 712, 874 P.2d 520, 523 (1994). This rule reflects the judiciary's reluctance to bind employers and employees to an unsatisfactory and potentially costly situation, even though either party would likely be damaged by an unforewarned termination of the employment relationship. *Id.*

In Idaho and other jurisdictions, the employment-at-will rule is not an absolute bar to a claim of wrongful discharge. As an exception to the general rule allowing either

party to terminate the relationship without cause, an employer may be liable for wrongfully discharging an employee when the termination violates public policy. *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 333, 563 P.2d 54, 57 (1977).

Although Idaho appellate courts have not addressed whether being terminated for running for political office falls within the public policy exception, the courts have decided several cases in which the public policy exception was discussed or applied. These cases offer guidance as to what situations might fall within the exception.

When the Idaho Supreme Court adopted the public policy exception in *Jackson*, the Court relied on cases from other jurisdictions defining and applying the exception. One definition reviewed was taken from a California appellate court decision in which the California court recognized that public policy is a difficult term to define. *See Petermann v. Int'l Bhd. of Teamsters, Local 396*, 174 Cal. App.2d 184, 344 P.2d 25, 27 (1959). The *Petermann* court stated that public policy included the principles under which freedom of contract or private dealing is restricted by law for the good of the community. The court also stated that whatever contravenes good morals or any established interests of society is against public policy. *Id.; see also Jackson*, 98 Idaho at 333, 563 P.2d at 57. In *Jackson*, the Court also cited *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), noting that the termination of an at-will employee which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract. This Court, in *Staggie v. Idaho Falls Consol. Hospitals, Inc.*, 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986), however, expressed doubt that the public policy exception would necessarily extend to terminations based upon bad faith.

The definitions cited in *Jackson* are general and somewhat vague. Under these standards, one could argue that as long as an employee was terminated based upon actions or interests that promote the public good, the termination would fall within the public policy exception. Many activities or situations, for which an at-will employee might be terminated, could be shown to promote the public good or benefit the community, including running for political office. However, not all such activities, situations, or interests would rise to the level necessitating the protection of the public policy exception. For example, the Idaho Supreme Court held that it was not against public policy when an employer offered an at-will employee a new position with an understanding that the precise terms would be negotiated at a later date, but terminated the employee when he later tried to negotiate the terms. *See Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 799 P.2d 70 (1990). The Court held that, absent a statute requiring employers to bargain, the failure to negotiate did not violate public policy and would not fall within the public policy exception. The Court also stated that such a claim was not supported by Idaho's prior case law.

Even when the legislature has made a statutory declaration of public policy, the Idaho Supreme Court has declined to include it in the public policy exception to the at-will rule. *See Ray v. Nampa Sch. Dist. # 131*, 120 Idaho 117, 814 P.2d 17 (1991). In *Ray*, the Court recognized that I.C. § 72–1302 was an expression of legislative policy against the ill effects of unemployment. However, the Court held that the statement did not rise to the level of public policy that would prevent an employer from discharging an at-will employee without cause.

Idaho appellate courts have given other indications of the types of situations that would fall within the public policy exception to the at-will rule. The *Jackson* Court summarized the types of activities, situations, or interests that are protected by the public policy exception, as determined by courts in other jurisdictions. These included protection for employees who refuse to give false testimony, employees who report injuries and file a workman's compensation claim, employees who refuse to date a superior, and those who serve on jury duty against the wishes of the employer. *See Jackson*, 98 Idaho at 334, 563 P.2d at 58.

Idaho appellate court decisions have also identified several types of activities and interests that fall within the public policy ex-

ception. In *Watson v. Idaho Falls Consol. Hospitals, Inc.*, 111 Idaho 44, 720 P.2d 632 (1986), the Court noted that Idaho statutory provisions protect union activities and recognized that other jurisdictions find a violation of public policy when an employee is discharged for union membership. Even though the Court did not decide the issue in *Watson*, a later Idaho Supreme Court decision noted that an employee's claim that her termination was in retaliation for her union activities, if true, would constitute a violation of public policy. *See Roberts v. Bd. of Trustees, Pocatello School Dist. No. 25*, 134 Idaho 890, 11 P.3d 1108 (2000). In *Ray*, 120 Idaho at 121, 814 P.2d at 21, the Court held that an employee's claim that he was terminated for reporting safety violations was sufficient to prevent entry of summary judgment. In *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981 (1996), the Court held that a state employee's termination violated public policy when, in response to a subpoena, but without seeking supervisor approval, the employee provided a statement on department letterhead.

Finally, the Idaho Supreme Court summarized what may be seen as its most recent definition of the public policy exception to the at-will employment rule:

> The purpose of the exception is to balance the competing interests of society, the employer, and the employee in light of modern business experience. "The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges." *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 668, 799 P.2d 70, 74 (1990).

*Crea v. FMC Corp.*, 135 Idaho 175, 178, 16 P.3d 272, 275 (2000).

Using this standard as a guide in this case, McKay needs no protection for refusing to commit an unlawful act. No illegal act was required of her. Nor does McKay have need of protection for performing a public obligation. No one is obligated to run for or hold public office. This leaves the last category—certain legal rights or privileges for which an employee may be protected.

Whether this category includes running for political office is not clear from past case law.

The parties in this case have turned to other jurisdictions to support their arguments on that issue. McKay argues that this Court should follow Missouri case law, which has indicated that terminating an employee for running for public office violates public policy. *See Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.Ct.App.1985). The bank, on the other hand, cites a New Mexico supreme court decision, which held that such a termination does not come within the public policy exception. *See Shovelin v. Cent. New Mexico Elec. Coop. Inc.*, 115 N.M. 293, 850 P.2d 996 (1993). One common thread running through both cases is that the public policy exception applies only if the discharge violates a clear mandate of public policy. *See Boyle*, 700 S.W.2d at 871; *Shovelin*, 850 P.2d at 1006.

This Court acknowledges the importance of running for and holding public office and recognizes the potential good it can bring to the community. However, contravention of public policy is a narrow exception to the at-will employment rule. If not narrowly construed, the exception could eviscerate the rule. As noted previously, many activities and interests engaged in by employees benefit the community. However, not all of them are recognized as falling within the public policy exception.

The legislature's policy regarding certain state employees' ability to run for political office is also influential on the Court's decision in this case. The legislature has itself restricted the ability of certain individuals to run for political office while employed by the state. *See* I.C. §§ 40–318(1)(c), 67–5311, 67–5309(n)(17). The position urged by McKay would prohibit a private employer from adopting the same policy the legislature has mandated for certain state employees. The very existence of these statutes contravenes an argument that Idaho has a "clear mandate" for applying this public policy exception to the at-will rule.

McKay finally argues that if every employer adopted a policy like the bank's, such action would have a chilling effect on employ-

ees who would otherwise run for public office. McKay asserts that this would create a serious impediment for our system of democratic government. We acknowledge that a policy such as the bank's could discourage certain employees from choosing to run for political office. However, that did not happen in McKay's case. Furthermore, McKay filed an affidavit of a professional specializing in employment law and organization development stating that the bank's policy was an outrageous and gross deviation from the employment industry practice in Idaho. The affidavit further provided an example of one Idaho company that authorized the continuation of an employee when he ran for mayor of an Idaho city. Thus, McKay's situation, and the information she provided to the district court, undermines her argument by showing that most Idaho employers do not have and are not likely to adopt such a policy.

In sum, this Court cannot say that McKay's interest in running for political office outweighs the bank's interest in avoiding being associated with partisan politics and the potential negative affects on its business operations. Idaho case law provides no clear mandate of public policy that would protect at-will employees who choose to run for political office. The Idaho legislature's policy limiting the ability of certain state employees to run for political office also shows no clear mandate of public policy to support McKay's position but, instead, indicates that there is no such public policy. Accordingly, this Court will not extend the public policy exception to cover at-will employees in the private sector who chose to run for political office.

■ Because of this Court's ruling on the public policy issue, we need only address one of the other issues raised by the bank— its request for attorney fees on appeal. The bank requests attorney fees under I.C. 12–120, and I.A.R. 41. The bank, however, provides no argument in support of its claim for attorney fees. When a party requesting attorney fees on appeal cites the statutes but *does not present argument*, the Court will not address the request. *Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 874, 993 P.2d 1197, 1205 (1999). Thus,

costs, but not attorney fees are awarded to the bank.

## III.

## CONCLUSION

Though an employer generally may terminate an at-will employee at any time and for any reason without incurring liability, the employer may be liable to the employee when the termination violates public policy. The public policy exception to the at-will employment rule is narrow and does not protect employees who chose to run for political office. For these reasons, we vacate the judgment in favor of McKay. Costs, but not, attorney fees are awarded to respondent, Ireland Bank.

Judge LANSING and Judge Pro Tem JUDD, concur.