## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket 40939

| | |
|---|---|
| TINA VENABLE, | ) |
|     Plaintiff-Appellant, | ) ) ) Boise, April 2014 Term |
| v. | ) |
| INTERNET AUTO RENT & SALES, INC., | ) 2014 Opinion No. 52 |
| and JOHN and JANE DOES 1 through X, | ) ) Filed: June 17, 2014 |
| whose true identities are unknown, | ) |
|     Defendants-Respondents. | ) ) Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

The judgment of the district court is affirmed.

Johnson & Monteleone, LLP, Boise, for appellant. Sam Johnson argued.

Greener Burke Shoemaker Oberrecht, P.A., Boise, for respondents. Phillip S. Oberrecht argued.

_____

J. JONES, Justice

This appeal arises from Internet Auto Rent & Sales, Inc.'s, termination of an employee, Tina Venable. Venable appeals the district court's grant of summary judgment against her on her claim of wrongful discharge in violation of public policy and denial of her motion for reconsideration. Both Venable and Internet Auto request attorney fees on appeal.

## I.
## BACKGROUND

Internet Auto Rent & Sales, Inc., an automobile dealership, hired Tina Venable as an Internet Manager on March 15, 2011. Venable has worked in the auto sales industry for approximately 15 years, holding a variety of management level positions. Venable states that after she began working for Internet Auto, she observed violations of the Idaho Consumer Protection Act ("ICPA") and the federal Truth in Lending Act. Specifically, she claims:

- Internet Auto illegally passed on acquisition fees to consumers which were in fact owed by the dealership and then illegally charged the consumer interest thereon;

1

- Internet Auto illegally charged for auto warranties in transactions where the consumer was purchasing the vehicle in the "As Is" condition;
- Internet Auto illegally charged for gap insurance in transactions where the consumer opted out of gap coverage;
- Internet Auto falsely advertised vehicles "for sale" which did not even exist in the inventory and falsely misrepresented the history of pre-owned vehicles to consumers;
- Internet Auto sold vehicles to consumers in excess of their advertised prices;
- Internet Auto engaged in the deceptive practice of failing to disclose all material contractual and financial terms to consumers, engaging in what is known in the industry as "packed payments";
- Internet Auto deceived consumers into believing the dealership had agreed to lower the sales price of units when in fact it had only extended the term of the loan, and thereby reduced the monthly payment amount disclosed to the consumer;
- Internet Auto further deceived consumers by employing a variety of "bait and switch" tactics designed to trick consumers into believing they were to receive one vehicle only to then substitute it later for another vehicle of lesser quality and value.

Venable stated that she "reported the occurrence of the above acts and practices to the General Sales Manager, Mr. Chris Plaza, and other members of the management team but was first told that I should mind my own business and was later told that this is how 'we do business' and to get on board or words to that affect." Venable claims that "[s]hortly after reporting the deceptive acts and practices to Mr. Plaza," she "discovered" that her "access to key programs used by the dealership had been denied which made it more difficult" for her "to complete sales transactions on behalf of Internet Auto."

A little over a month after hiring Venable, Internet Auto discharged her. After her termination, Venable filed a complaint against Internet Auto alleging breach of contract claims, wrongful discharge in violation of public policy, and negligent and intentional infliction of emotional distress. She later filed an amended complaint to additionally allege slander.

Internet Auto was granted summary judgment on all of Venable's claims except for slander and negligent infliction of emotional distress. Venable filed a motion for reconsideration of the wrongful discharge claim, which was denied. At trial, the jury found for Internet Auto on both of her remaining claims. Following the jury verdict, Venable filed a second motion for reconsideration of the wrongful discharge claim, which was denied. Venable timely appealed.

## II.
## ISSUES ON APPEAL

I. Did the district court err when it granted summary judgment in favor of Internet Auto on Venable's claim for wrongful discharge of employment in violation of public policy?

II. Did the district court err when it denied Venable's second motion for reconsideration of her wrongful discharge claim?

III. Is either party entitled to an award of attorney fees?

## III.
## STANDARD OF REVIEW

"In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment." *Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 205, 61 P.3d 557, 562 (2002). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Oats v. Nissan Motor Corp. in U.S.A.*, 126 Idaho 162, 164, 879 P.2d 1095, 1097 (1994). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The Court exercises free review over questions of law. *Rhodes v. State*, 149 Idaho 130, 132, 233 P.3d 61, 63 (2010).

## IV.
## ANALYSIS

### A. Motion for Summary Judgment

Venable contends that Internet Auto was not entitled to summary judgment on the issue of wrongful discharge because she identified sufficient law and facts to show that she was protected under the public policy exception to Idaho's at-will employment doctrine. Under Idaho law, "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is 'at will.'" *Thomas*, 138 Idaho at 206, 61 P.3d at 563 (quoting *Nilsson v. Mapco*, 115 Idaho 18, 22, 764 P.2d 95, 99 (Ct. App. 1988)) (quotation marks omitted). Venable does not dispute that her employment with Internet Auto was at-will. An at-will employee may be terminated by his or her "employer at any time for any reason without creating liability." *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 176, 75 P.3d 733, 737 (2003). That an employee was at-will "is not, however, an absolute bar to a claim of wrongful discharge." *Jackson v. Minidoka Irrigation Dist.*,

98 Idaho 330, 333, 563 P.2d 54, 57 (1977). Idaho recognizes "a narrow exception to the at-will employment presumption where the employer's motivation for the termination contravenes public policy." *Bollinger v. Fall River Rural Elec. Co-op, Inc.,* 152 Idaho 632, 640, 272 P.3d 1263, 1271 (2012).

A termination contravenes public policy "only where an employee is terminated for engaging in some protected activity, which includes (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges." *Id.* This exception exists to "balance the competing interests of society, the employer, and the employee in light of modern business experience." *Crea* v. *FMC Corp.*, 135 Idaho 175, 178, 16 P.3d 272, 275 (2000). A claim for wrongful discharge presents issues of law and fact—to bring a successful claim under the public policy exception, an employee must show that she was engaged in a legally protected activity and that there is a causal relationship between her engagement in the protected activity and her termination. *Bollinger,* 152 Idaho at 640, 272 P.3d at 1271.

> The public policy exception has been protected in Idaho on several occasions. *E.g., Watson v. Idaho Falls Consol. Hosps., Inc.*, 111 Idaho 44, 720 P.2d 632 (1986) (protecting participation in union activities); *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991) (protecting reports of electrical building code violations); *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981 (1996) (protecting compliance with a court issued subpoena). This Court has also indicated that the public policy exception would be applicable if an employee were discharged, for example for refusing to date her supervisor, for filing a worker's compensation claim, or for serving on jury duty. *Sorensen*, 118 Idaho at 668, 799 P.2d at 74 (citations omitted).

*Thomas*, 138 Idaho at 208, 61 P.3d at 565.

Nonetheless, "contravention of public policy is a narrow exception to the at-will employment rule." *McKay v. Ireland Bank*, 138 Idaho 185, 189, 59 P.3d 990, 994 (Ct. App. 2002). If the exception is "not narrowly construed," it "could eviscerate the rule." *Id.* Although "many activities and interests engaged in by employees benefit the community. . . . not all of them are recognized as falling within the public policy exception." *Id.*

To determine whether an employee was engaged in a protected activity, "this Court analyzes (1) whether there is a public policy at stake sufficient to create an exception to at-will employment, and (2) whether the employee acted in a manner sufficiently in furtherance of that policy." *Bollinger,* 152 Idaho at 640, 272 P.3d at 1271 (quotation marks omitted). "The

4

determination of what constitutes public policy sufficient to protect an at-will employee from termination is a question of law." *Van v. Portneuf Medical Center*, 147 Idaho 552, 561, 212 P.3d 982, 991 (2009). "Once the court defines the public policy, the question of whether the public policy was violated is one for the jury." *Id.*

With regard to the first issue, the Idaho Consumer Protection Act does establish public policy for the State of Idaho. Idaho Code § 48-602 states it to be the purpose of the ICPA to "protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protection." Venable contends that Internet Auto "fired me because I refused to break the law." However, a plaintiff claiming a public policy violation must do more than simply cite to a broad-ranging act, without specifying a specific provision or implementing regulation that was allegedly violated.

In *Bollinger*, we held that a plaintiff failed to support her claim for termination in violation of a public policy where she claimed a violation of Occupational Safety and Health Administration regulations but failed to identify a specific regulation or legal requirement. 152 Idaho at 641, 272 P.3d at 1272. In order to properly state a claim under the public policy exception, a plaintiff must specifically identify the public policy in question and then provide evidence to show a violation of the public policy. In this case, Venable claims that she:

> cited to the [ICPA] as a whole which would encompass all other sections of the Act, including § 48-603 which reads in part:
>
>> The following unfair methods of competition and <u>unfair or deceptive acts or practices in the conduct of any</u> trade or commerce are <u>hereby declared to be unlawful</u>, . . . . (Emphasis added).
>
> Venable further identified the Idaho Consumer Protection Act as the policy-basis of her employment law claim by moving the district court to take judicial notice of the same. R., Vol. I, pp. 317-319. In her request for judicial notice, Venable asked this Court to take:
>
>> Judicial notice of the fact that the Idaho legislature has enacted certain legislation which "shall be known and may be cited as the '<u>Idaho consumer protection act</u>.'" *See* Idaho Code § 48-601, *et seq.* Further, that when adopting the Idaho consumer protection act, the Idaho legislature <u>declared certain acts or practices to be unlawful</u> in the conduct of any trade or commerce and such acts are currently set forth <u>under Idaho Code § 48-603</u>. (Emphasis added).

5

This is simply inadequate to meet the requirements set out in *Bollinger*. In essence, Venable left it to the district court to examine each of the eight bullet points in her complaint and affidavit and determine which provision of the ICPA might apply. By citing Idaho Code § 48-601, the statement of policy, she assumed that the district court would then go to Idaho Code § 48-603 and parse through the 19 unfair methods and practices listed in the subsections of that provision in an attempt to discover the public policy or policies at issue. That is not sufficient. The ICPA consists of 19 sections, lists numerous illicit practices, and is fleshed out more fully in over 30 pages of regulations issued by the Idaho Attorney General. IDAPA 04.02.01.001-237. It is simply insufficient to point generally to an act comprising a chapter of the Idaho Code and leave it to the court to match up the alleged misconduct with an applicable provision of the chapter.

Even if Venable had tied a specific bullet point of alleged misconduct to a specific provision of the ICPA, she would need to have presented competent evidence to show that the employer violated the public policy and that she was terminated for engaging in protected activity. To determine whether an employee was engaged in a protected activity, an employee generally must not only present evidence of the employer's misconduct, but also of her own conduct in furtherance of the identified public policy. *Thomas*, 138 Idaho at 209–10, 61 P.3d at 566–67 (holding that summary judgment was inappropriate in a wrongful discharge claim where questions of fact remained as to whether the employee's conduct was in furtherance of the identified public policy); *Edmondson*, 139 Idaho at 178, 75 P.3d at 739 (noting that an employee pursuing a wrongful discharge claim under the public policy exception to at-will employment could not recover given the "dearth of evidence" to show the employer's alleged wrongful acts).

Venable argues that Internet Auto engaged in multiple violations of the Idaho Consumer Protection Act, and that she was terminated "for refusing to commit unlawful acts and practices within the context of her employment." In support of her claim that there are genuine issues of material fact as to whether she engaged in a protected activity, Venable points generally to the following evidence: (1) her own affidavit; (2) the affidavit of Robert Heath, a former employee of Internet Auto; (3) her own testimony; and (4) the testimony of Joey Winter and Chris Plaza, former employees of Internet Auto.

"When considering evidence presented in support of or opposition to a motion for summary judgment, a court can only consider material which would be admissible at trial." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 14, 175 P.3d 172, 176 (2007). As the moving party,

Internet Auto bore the initial burden of establishing the absence of a genuine issue of material fact.

> The burden of proving the absence of material facts is upon the moving party. Once the moving party establishes the absence of a genuine issue, the burden shifts to the nonmoving party to show that a genuine issue of material fact on the challenged element of the claim does exist.

*Hei v. Holzer*, 139 Idaho 81, 85, 73 P.3d 94, 98 (2003) (internal citations omitted). "Therefore, the moving party is entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Thomson v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002). Venable does not contend that Internet Auto failed to meet its initial burden. Thus, the burden is on her to show the existence of a genuine issue of material fact.

> Rule 56(e) requires a party to respond to a motion for summary judgment with something more than relying on the mere allegations or denials in the pleadings. Affidavits or other proof must be presented to the court to set forth the specific facts showing that there is a genuine issue existing for trial.

*Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 833, 801 P.2d 37, 40 (1990); *see also Oats*, 126 Idaho at 166, 879 P.2d at 1099 (holding that the non-moving party "failed to present evidence sufficient to create a genuine issue" when the offered evidence "was wholly conclusory, and merely repeated allegations" contained in the non-moving party's complaint).

A review of the evidence offered by Venable reveals no specific facts. First, the relevant section of Venable's own affidavit is a near verbatim recitation of her pleading allegations. Thus, it provides no additional information to support her initial conclusions. She states:

> Based upon my roughly fifteen (15) years of experience in auto sales, I understood and believed in good faith that the following acts and practices I observed at the dealership were in violation of not only industry standards but also in violation of the [ICPA] and/or the Truth in Lending Act:
>
> a. Internet Auto illegally passed on acquisition fees to consumers which were in fact owed by the dealership and then illegally charged the consumer interest thereon;
> b. Internet Auto illegally charged for auto warranties in transactions where the consumer was purchasing the vehicle in the "As Is" condition;
> c. Internet Auto illegally charged for gap insurance in transactions where the consumer opted out of gap coverage;

7

d. Internet Auto falsely advertised vehicles "for sale" which did not even exist in the inventory and falsely misrepresented the history of pre-owned vehicles to consumers;

e. Internet Auto sold vehicles to consumers in excess of their advertised prices;

f. Internet Auto engaged in the deceptive practice of failing to disclose all material contractual and financial terms to consumers, engaging in what is known in the industry as "packed payments";

g. Internet Auto deceived consumers into believing the dealership had agreed to lower the sales price of units when in fact it had only extended the term of the loan, and thereby reduced the monthly payment amount disclosed to the consumer;

h. Internet Auto further deceived consumers by employing a variety of "bait and switch" tactics designed to trick consumers into believing they were to receive one vehicle only to then substitute it later for another vehicle of lesser quality and value[.]

This affidavit does not establish a genuine issue of material fact because it fails to address Venable's own conduct and simply recites Venable's allegations against Internet Auto. Absent specific facts, the affidavit cannot provide a basis to deny summary judgment.

The affidavit of Robert Heath provides no more insight into Venable's conduct. His affidavit provides the following:

During the time of my employment at Internet Auto Rent & Sales, General Sales Manager Chris Plaza instructed us to sell packed payments to customers. The practice of selling packed payments involved charging customers extra for warranties and gap insurance that the customers had no knowledge of. We were also told to charge higher prices for cars than the prices listed in the advertisements on the internet, when a customer had not seen the advertised price.

General Sales Manager Chris Plaza also instructed us to pass on acquisition fees to customers which were charged by lending institutions in subprime transactions and were to be paid directly by the dealership to the lender. He further instructed us to include the transaction fee charged in credit card transactions in with the purchase price;

Chris Plaza also directed us to put customers in cars even though we knew through our experience in the industry the buyer would not likely qualify for a loan, but this way the customer was able to drive the car off the lot and take it home. Then the dealership would contact the buyer a few days later and explain the deal fell through and therefore the buyer had to return the car. Upon the buyer's return of the car to the dealership, we were instructed to switch the buyer into a different car which would bring a higher return to the dealership. Buyers

8

often felt obliged to buy the substituted car so as to avoid any embarrassment associated with having a new car to having no car at all;

Internet Auto Rent & Sales would also advertise units for sale in Boise when the car was not within the Boise inventory, [but] may have been sitting on the lot in Reno or Winnemucca. The ads however clearly depicted the car to be on the lot in Boise;

Chris Plaza recognized many of Internet Auto Rent & Sales['] customers were in desperate need to secure some form of transportation, and so he directed us to take advantage of the situation by employing the tactics referenced above and others. If we did not go along with his tactics, he would start to take away our access to computer programs, and our access to work deals and gain approval for deals[.]

Even assuming that the statements in Heath's affidavit are admissible and constitute facts rather than mere allegations, they fail to address the key issue of Venable's conduct. Furthermore, Venable has failed to provide argument or authority showing that the practices described by Heath could constitute unlawful conduct under the ICPA.

In her briefing, Venable argues that she used her affidavit to point the district court to her deposition testimony: in her affidavit she "cited to her earlier deposition transcript where she testified from her own personal knowledge as an employee of Internet Auto about how the dealership engaged in the unfair and deceptive acts identified above, and referenced the specific pages of the transcript where such testimony could be found by the district court." In her affidavit, Venable stated, "[d]uring my deposition, I testified from my personal knowledge and observations as an employee of Internet Auto, how the dealership engaged in the unfair and deceptive acts and practices listed above. My testimony along these lines starts on page eighty nine (89) and ends on page one-hundred twenty (120)." Rather than identifying specific testimony to provide factual support for her allegations, Venable simply makes a general reference to 32 pages of her deposition. She essentially asked the trial court—and now asks this Court—to comb through her deposition testimony, seeking a genuine issue of material fact. Venable has misunderstood her burden. "[T]he trial court is not required to search the record looking for evidence that may create a genuine issue of material fact; the party opposing the summary judgment is required to bring that evidence to the court's attention." *Esser Elec. v. Lost River Ballistics Technologies, Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008); *see also Miller v. Callear*, 140 Idaho 213, 218, 91 P.3d 1117, 1122 (2004) (noting that appellants who fail to identify error in the record fail to meet their burden of showing error on appeal).

Furthermore, even after a thorough combing, Venable's deposition fails to provide admissible evidence to support her allegations. For example, when asked how she "knew that some of the sales managers were packing payments," she explained that "in my position I would be sent out very often to close deals. They would give me a write back, and it would not disclose everything that is required by law to present to the consumer for them to make a decision if they chose to buy the car or not." When asked which deals she was specifically referring to, she said, "I don't know which specific deals. I didn't make a record of it. I didn't think I would be sitting here."

Indeed, Venable was unable to identify a single, specific deal that provided proof of Internet Auto's allegedly illegal conduct. Arguably, she came the closest to providing concrete factual details when she testified as to her own son-in-law's vehicle purchase. She claimed that when her son-in-law purchased a vehicle from Internet Auto, the dealership "inflated the cost of the vehicle to cover his acquisition fees." She explained that she knew Internet Auto had inflated the vehicle cost

> [b]ecause when you submit a deal structure to a lender, . . . they send what is called a call back. They fax it back to you or email it back to you. . . . I could see what they were willing to finance, at what rate and term. So I knew what the acquisition fee was. I think in his case it was like $1,099. And there was another fee in addition to that of $99. That was the amount the dealership needed to absorb to put that deal together.

> And the cost of the vehicle was inflated by the $1,000, which is the family deal on the cost – I don't remember the exact numbers, but for the sake of argument, let's say the vehicle was $20,000. That's what we paid for it. That's what we owned it for. It was inflated by the $1,000 to make a profit, because every car deal you want to make a profit. But instead of making $4,000, $5,000 or $6,000 profit we only made $1,000 profit because it was a family member. It was inflated additionally by another $1,500, and that was to cover the acquisition fees.

Venable previously stated that acquisition fees are "costs" to be absorbed by the dealership. Assuming that Venable's testimony as to the information contained in the "call back" is admissible, and ignoring the numerical discrepancies in her statements, the testimony is insufficient to demonstrate that Venable was engaged in a protected activity because she fails to provide any authority or argument to demonstrate that it is illegal for a car dealership to recover the costs of a deal or that she refused to engage in that activity.

Finally, Venable points to the testimony of Joey Winter and Chris Plaza, both former employees of Internet Auto. This Court will not consider Plaza's statements because he testified

during trial and his testimony was therefore not part of the trial court record at the time Internet Auto presented its Motion for Summary Judgment. This Court "review[s] only that portion of the record which was before the trial court at the time the summary judgment motion was presented." *Brown*, 118 Idaho at 833, 801 P.2d at 40. As to Winter, Venable states that he "testified from personal knowledge how he recalled that Venable had made reports to General Sales Manager Chris Plaza about the existence of improper conduct occurring at the dealership." Regardless of any issues relating to the admissibility of these statements, the testimony does not relate to whether Venable herself refused to engage in any unlawful activity.

Venable claimed that she was engaged in a protected activity because she "refused to engage in the unlawful business acts and practices rampant at the dealership," yet she fails to identify even one specific instance of her own refusal to engage in an illegal act. Ultimately, Venable's appeal fails—without evidence of her own conduct, she cannot establish that she was engaged in a protected activity. Because Venable failed to demonstrate that she was engaged in a protected activity, we need not address whether Venable was terminated for refusing to engage in unlawful activity and affirm the district court's grant of Internet Auto's Motion for Summary Judgment.

### B.      Motion for Reconsideration

Venable argues that the district court should have granted her second motion for reconsideration, which she filed after trial. "A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment." I.R.C.P. 11(a)(2)(B). Specifically, Venable contends that "[t]he district court committed clear error" when it denied her motion. This Court, however, does not review the decision to deny a motion for reconsideration for clear error. "[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Therefore, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.*

"[W]hen presented with a motion for reconsideration of an interlocutory order pursuant to I.R.C.P. 11(a)(2)(B). . . . the trial court should take into account any new facts presented by the

11

moving party that bear on the correctness of the interlocutory order." *Coeur d'Alene Mining Co. v. First Nat. Bank of N. Idaho*, 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990). "The burden is on the moving party to bring the trial court's attention to the new facts. We will not require the trial court to search the record to determine if there is any new information that might change the specification of facts deemed to be established." *Id.* For example, in *Coeur d'Alene Mining*, the moving party "did not at any time bring to the trial court's attention" new evidence on which the trial court's order may have been changed and therefore, "the trial court had no basis upon which to reconsider its order . . . ." *Id.*

In her brief in support of her second motion for reconsideration, Venable brought to the attention of the district court her own testimony and the testimony of Mr. Heath and Mr. Plaza in an attempt to demonstrate that she was asked to engage in deceptive practices. Nonetheless, and as noted by the district court, "Mr. Heath never testified that any of the complained of acts were deceptive or otherwise unlawful." Instead, "Mr. Heath testified that Mr. Plaza had the employees pack payments . . . . but admitted that any of his testimony regarding the packing of payments was speculation because such matters would be handled by the finance department, of which he had no part." Rather, he "only expressed that acquisition fees were a cost of doing business and, only in his opinion, should not be passed on to customers."

Mr. Plaza "testified that Venable never questioned him about the business practices that Internet Auto engaged in, nor did Venable approach Mr. Plaza about any alleged illegal passing on of acquisition fees to customers or packing of payments." Furthermore, "Mr. Plaza testified that he was not aware of any transactions at Internet Auto wherein acquisition fees were passed on to customers, nor was he ever told that such fees were passed on to customers."

Venable "offered general testimony that she complained to Mr. Plaza about practices at the dealership in which she refused to participate and that Mr. Plaza told her 'she needed to get on board.'" For example, she stated that she "actively and loudly refused to participate in" business practices she believed to be "unfair to the consumer, things that [she] viewed as deceptive, things that [she] had not encountered in any other dealership, and [she] complained a lot" to Internet Auto's management about these practices. Yet, none of her testimony addressed any specific instances of her own engagement in protected activity. Furthermore, Venable "conceded at hearing on re-reconsideration that" her "denial of access to the automated programs for submitting loans to banks was not because of her complaints to management."

12

Even pointing to this additional testimony, Venable still failed to submit evidence on which the district court could have changed its order. She did not provide testimony of specific instances where conduct allegedly violative of specific provisions of the ICPA occurred. The evidence she offered did not address the issue of whether Venable herself refused to engage in a protected activity and, as stated by the district court, "[m]erely citing a list of allegations and conclusions is not the same as presenting admissible evidence in support." Therefore, the district court properly denied Venable's second motion for reconsideration because she failed to present a genuine issue of material fact.

### C.     Attorney Fees

Internet Auto argues that it is entitled to fees under Idaho Code § 12-121, which provides:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

I.C. § 12-121. The Court will award fees if it "determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999).

As the prevailing party, Internet Auto is entitled to its fees under Section 12-121 because Venable has failed to produce evidence to show that a genuine issue of material fact exists that Internet Auto committed acts violative of any specific provision of the ICPA or that she engaged in protected activity in response. From the time she filed her complaint until this proceeding on appeal, Venable has primarily relied on the eight bullet points set out above, without bothering to flesh out the details either of the alleged illegal conduct on the part of Internet Auto or of the specifics of her engagement in protected activity. Her failure is particularly surprising given the district court's multiple decisions pointing out this deficiency.

First, in its initial order granting summary judgment, the district court found that "although Venable essentially contends she was terminated for refusing to commit unlawful acts, her First Amended Complaint does not identify any violated regulations beyond generally referring" to the ICPA. "Beyond these vague references, Venable has offered no citations or argument as to how the alleged conduct violated the above provisions other than broad statements that it was somehow illegal without any specific detail or authority."

13

Second, in its order denying reconsideration of summary judgment, the district court noted that "[w]hile the 'more than a mere scintilla of evidence or slight doubt' standard is not a very high standard to meet, after the Court's first, second, and now third review of the evidence," Venable "has not met this burden of demonstrating there is a material issue of fact" as to any issues relating to wrongful discharge in violation of public policy.

Finally, in its order denying the second motion for reconsideration, the district court stated that "Venable still has not submitted evidence that she was engaged in a protected activity by refusing to commit an unlawful act, nor that her termination was in fact motivated by her participation in that activity." Nonetheless, on appeal Venable offers the same arguments and "evidence" she offered the district court. Her conclusory allegations still fail, and for that reason, Internet Auto is entitled to its fees pursuant to Idaho Code §12-121.

## V.
## CONCLUSION

The judgment of the district court is affirmed and Internet Auto is awarded its attorney fees and costs on appeal.

Chief Justice BURDICK, and Justices EISMANN and W. JONES, and Justice Pro Tem KIDWELL CONCUR.

14